UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   Order DENYING Defendants' Motions to Dismiss

  Before the Court are Defendants Bureau of Ocean Energy Management ("BOEM"), Richard Yarde, David Fish, Abigail Hopper, Brian Salerno, Bureau of Safety and Environmental Enforcement ("BSEE"), Joan Barminski, Mark Fesmire, U.S. Department of the Interior, and Sally Jewell (collectively "federal Defendants"), and Intervenor Defendant American Petroleum Institute's ("API") motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Dkts. # 43, 46. Defendants move to dismiss on two grounds. First, they argue that Plaintiffs' National Environmental Policy Act ("NEPA") and Coastal Zone Management Act ("CZMA") claims are not justiciable because Plaintiffs cannot identify a "final agency action" that makes BOEM and BSEE's actions subject to judicial review under § 702 of the Administrative Procedure Act ("APA"). Second, Defendants argue that Plaintiffs' Endangered Species Act ("ESA") claim is not ripe and moot.

  The Court received oppositions to Defendants' motions from three sets of Plaintiffs: (1) Environmental Defense Center and Santa Barbara Channel Keeper ("EDC" and "EDC Opp."), Dkts. # 57, 60; (2) the People of the State of California and the California Coastal Commission ("State Opp."), Dkt. # 58; and (3) the Center for Biological Diversity and the Wishtoyo Foundation ("CBD" and "CBD Opp."), Dkts. # 64, 66.[1]

  The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having read and considered the papers filed in connection with these motions, the Court DENIES Defendants' motions to dismiss.

---

[1]   Unless otherwise indicated, citations to "EDC Opp." and "CBD Opp." refer to Plaintiffs' oppositions to the federal Defendants' motion to dismiss. Dkts. # 43, 64. Similarly, citations to "Mot." and "Reply" refer to the federal Defendants' motion to dismiss, Dkt. # 43, and the reply, Dkt. # 70.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | Date | July 14, 2017 |
|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | |

I. Background

This consolidated case relates to two prior cases previously brought in this Court: *Environmental Defense Center et al. v. BSEE et al.*, No. CV 14-9281 PSG (FFMx), and *Center for Biological Diversity et al. v. BOEM et al.*, No. CV 15-1189 PSG (FFMx). The cases alleged that the federal Defendants violated NEPA by approving fifty-one permits that authorized offshore well-stimulation treatments ("WSTs")—more commonly known as "fracking" or "acidizing"—on the Pacific Outer Continental Shelf ("POCS") without conducting an adequate environmental review. *See EDC Opp.* 4:16–27. Both prior cases culminated in substantively similar Settlement Agreements entered by the Court on March 24, 2016. *See* CV 14-9281, Dkt. # 85; CV 15-1189, Dkt. # 85. In the Settlement Agreements, the federal Defendants agreed to conduct an Environmental Assessment ("EA") of the potential environmental impacts of WSTs off the coast of California in the vicinity of Santa Barbara, Ventura, and Los Angeles counties. *See Settlement Agreement* (CV 15-1189), Dkt. # 43-1, at 8, ¶ I.A; *Settlement Agreement* (CV 14-981), Dkt. # 43-1, at 18, ¶ I.A.

> Specifically, in the Settlement Agreements, the federal Defendants agreed:
> BOEM and BSEE will undertake a programmatic Environmental Assessment ("EA") pursuant to the National Environmental Policy Act ("NEPA") to analyze the potential environmental impacts of well-stimulation practices on the Pacific OCS, including hydraulic fracturing and acid well stimulation. The focus of the EA will be on foreseeable future well-stimulation activities requiring federal approval, not past completed or expired activities for which no further federal actions remain, except to the degree that analysis of such past actions may be relevant to assessing the environmental baseline and/or an analysis of cumulative or other effects. This assessment will result in a determination that either an Environmental Impact Statement ("EIS") and Record of Decision ("ROD") is required or a Finding of No Significant Impact ("FONSI") is appropriate. BOEM and BSEE shall complete and issue the final programmatic EA by May 28, 2016, and will also issue a FONSI by that date if BOEM and BSEE determine that a FONSI is the appropriate outcome of the EA.

*See Settlement Agreement* (CV 15-1189), Dkt. # 43-1, at 8, ¶ I.A; *Settlement Agreement* (CV 14-981), Dkt. # 43-1, at 18, ¶ I.A. Although Plaintiffs reserved their right to challenge the "EA/FONSI or EIS/ROD" as a separate legal action, the Settlement Agreement also states that "[n]othing in this Settlement Agreement constitutes, or may be construed to constitute, a waiver of sovereign immunity by the United States." *See Settlement Agreement* (CV 15-1189), Dkt. # 43-1, at 8, 13, ¶¶ I.A, E; *Settlement Agreement* (CV 14-981), Dkt. # 43-1, at 19, 23, ¶¶ I.A, F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | | |

As required by the Settlement Agreements, BOEM and BSEE completed a timely EA and ultimately decided to issue a FONSI, concluding that the use of WSTs on the POCS would have "no significant impact" on the "human environment." *See Hall Decl.*, Exs. 1A, 1B, Dkt. # 57-1. Prior to issuing the EA and FONSI, BOEM and BSEE released a draft EA and solicited comments from many sources, including Plaintiffs. *See State Compl.* ¶¶ 42–47. The EA focused on the "Proposed Action" of "allowing the use of WSTs" without restriction. *See Hall Decl.*, Exs. 1A, 1B, Dkt. # 57-1. The EA compared this "Proposed Action" to three alternatives: (1) allow use of WSTs with subsurface seafloor depth stipulations, (2) allow use of WSTs but no open water discharge of WST waste fluids, and (3) do not allow the use of WSTs. *Hall Decl.*, Ex. 1B, Dkt. # 57-1, at 307. In the final EA, BOEM and BSEE adopt the Proposed Action and "propose to allow the use of selected well stimulation treatments ("WSTs") on the 43 current active leases and 23 operating platforms on the Southern California Outer Continental Shelf." *Hall Decl.*, Ex. 1A, at 23:6–9. BOEM and BSEE acknowledged that, if the Proposed Action were approved:

> BSEE technical staff and subject matter experts will continue to review applications for permit to drill (APDs) and applications for permit to modify (APMs), and, if deemed compliant with performance standards identified in BSEE regulations at Title 30, *Code of Federal Regulations*, Part 250, subpart D (30 CFR Part 250, subpart D), will approve the use of fracturing and non-fracturing WSTs at the 22 production platforms[1] located on the 43 active leases on the POCS.

*Id.* at 308. BOEM and BSEE formally concluded in the FONSI:

> It is our determination that the Proposed Action would not cause any significant impacts. It is our determination that implementing the Proposed Action does not constitute a major federal action significantly affecting the quality of the human environment within the meaning of Section 102(2)(C) of the National Environmental Protection Act.

*Id.* at 312. Plaintiffs describe this decision as ending the "moratorium on permit approvals involving the use of WSTs" and "opening the door to these practices." *See, e.g.*, *EDC Opp.* 2:1–3.

After BOEM and BSEE issued its EA and FONSI, Plaintiffs filed suit in the Central District of California challenging the EA and FONSI. *See Envt'l Def. Ctr. et al. v. Bureau of*

---

[1] BOEM and BSEE reference a different number of platforms in the EA and the FONSI. The EA refers to 23 "operating platforms," *see Hall Decl.*, Ex. 1A, at 23:6–9, while the FONSI refers to 22 "production platforms," *id.*, Ex. B, at 308.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | | |

*Ocean Energy Mgmt. et al.*, CV 16-8418 (filed Nov. 11, 2016); *Ctr. for Biological Diversity et al. v. Bureau of Ocean Energy Mgmt. et al.*, CV 16-8473 (filed Nov. 15, 2016); *California et al. v. U.S. Dep't of Interior et al.*, CV 16-9352 (filed Dec. 19, 2016). Plaintiffs allege that the federal Defendants violated NEPA by "failing to take a hard look at the impacts of their action by neglecting to analyze all potential impacts or a reasonable range of alternatives, and understating the frequency and intensity of the impacts." *EDC Opp.* 1:12–16. The State of California additionally alleges that Defendants violated CZMA by failing to prepare a consistency determination for the Proposed Action.[1] *State Compl.* ¶¶ 66–69. The EDC and CBD Complaints allege that Defendants violated the ESA because they "failed to engage in consultation to ensure their action does not jeopardize listed species or result in the destruction or adverse modification of their critical habitat." *EDC Compl.* ¶ 204. All three cases were transferred to this Court, and the Court consolidated the cases for all purposes on February 17, 2017, administratively closing the two later-filed cases. *See* CV 16-8418, Dkt. # 22.

After Plaintiffs filed this litigation and a week before the federal Defendants filed their motion to dismiss in March 2017, BOEM and BSEE prepared and submitted Biological Assessments to the National Marine Fisheries Service and the U.S. Fish and Wildlife Service (collectively, "the Services"). *See Mitchell Decl.*, Dkt. # 43-1, Exs. 2, 4. The ESA indicates that the submission of such a Biological Assessment to the Services is one of the first steps in the ESA "consultation" process. *See* 50 C.F.R. § 402.14(c); 16 U.S.C. § 1536(c); *see also Mot.* 5:1–18.

The federal Defendants now move to dismiss the Complaints on Rule 12(b)(1) grounds. Intervenor Defendant API joins in the federal Defendants' arguments, and raises some limited, additional concerns about the CZMA claim. *See API's Reply*, Dkt. # 68.

II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a case if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). At the pleading stage, plaintiffs bear the burden of demonstrating that the court has subject matter jurisdiction and must do so by

---

[1] The CZMA encourages states to develop management plans for their coastal zones and requires federal agency activities occurring within the coastal zone, or affecting the water or resources of the coastal zone, to be "carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of approved State management programs." 16 U.S.C. § 1452(1). In order to ensure consistency, the federal agency must submit a "consistency determination" to the relevant state agency for review. *Id.* § 1456(c)(1)(C); 15 C.F.R. § 930.36. The state agency then informs the federal agency of its concurrence with or objection to the consistency determination. 15 C.F.R. § 930.41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | Date | July 14, 2017 |
|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | |

"clearly alleg[ing] facts demonstrating" each element. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A jurisdictional attack under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Id.* By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.* Here, Defendants' attack on the Complaint is a factual attack because Defendants challenge whether the EA and FONSI are final agency actions under the APA, and they cite to the declaration of Michael Mitchell and other exhibits to support their argument. *See id.* (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (recognizing that a jurisdictional challenge is factual where it "relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings")); *see also Friends of the River v. U.S. Army Corps. of Eng'rs*, 870 F. Supp. 2d 966, 972 (E.D. Cal. 2012) (reviewing a motion to dismiss as a factual challenge where defendants attached exhibits and argued that the agency had not yet taken a "final agency action").

In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). The court need not presume the truthfulness of plaintiffs' allegations. *White*, 227 F.3d at 1243. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2.

III.   Discussion

Defendants raise two arguments for dismissing the Complaints under Rule 12(b)(1). First, Defendants argue that the EA and the FONSI are not "final agency action[s]," and therefore Plaintiffs' NEPA and CZMA claims are not justiciable under § 702 of the APA. *See Mot.* 6:20–7:21. Second, Defendants assert that Plaintiffs' ESA claims are not ripe because BOEM and BSEE have not taken any action that would trigger the ESA's section 7 consultation requirements, or are otherwise moot because BOEM and BSEE have already started the consultation process by submitting Biological Assessments to the Services. The Court first addresses the NEPA and CZMA arguments, and then turns to the ESA arguments.

   A.   Justiciability of Plaintiffs' NEPA and CZMA Claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | | |

The United States, as sovereign, is immune from suit "save as it consents to be sued." *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2001) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Neither the NEPA nor the CZMA statutes provide for judicial review. *See, e.g.*, *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1205–06 (9th Cir. 2004); *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 375–76 (1989); *cf. Bennett v. Spear*, 520 U.S. 154, 173–74 (1997) (recognizing that the ESA has its own citizen-suit provision that provides judicial review for claims such as those brought here). The only mechanism for judicial review of an agency's NEPA or CZMA determination is § 702 of the APA, which provides a limited waiver of the federal government's sovereign immunity to allow judicial review over NEPA and CZMA claims. *See Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104–05 (9th Cir. 2007). Section 702 provides a right to judicial review of "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 702; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *see also Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970) (recognizing § 702 as a form of non-constitutional, statutory standing that requires the plaintiff to identify an "agency action" and show that the "interest sought to be protected . . . is arguably within the zone of interests to be protected or regulated by statute").

The parties dispute whether the EA and the FONSI issued by BOEM and BSEE in March 2016 are "final agency actions." The EA and the FONSI are both products created by NEPA. NEPA is a federal statute that informs agency decisionmakers of the significant environmental effects of proposed major federal actions, and ensures that relevant information is made available to the public. *See* 42 U.S.C. § 4332(2)(C); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). NEPA review begins with the preparation of an EA that evaluates whether a Proposed Action might have a "significant impact" on the environment. *See* 40 C.F.R. §§ 1501.4, 1508.9. If the analysis in the EA demonstrates that the Proposed Action will not have a significant impact, the agency prepares a FONSI. *Id.* §§ 1501.4(c), 1508.13. If the analysis demonstrates that the Proposed Action will have a significant impact, the agency prepares an Environmental Impact Statement ("EIS"). *See* 42 U.S.C. § 4332(2)(C). When an agency prepares an EIS, it must also issue a Record of Decision ("ROD") that states the agency's decision, identifies alternatives considered, and discusses how environmental harms will be avoided or minimized. 40 C.F.R. § 1505.2. Although an agency might determine that an EIS is not necessary, an agency may still choose to conduct additional site-specific environmental analysis. *Id.* § 1508.28.

Plaintiffs argue that the EA and the FONSI are "final agency actions" that qualify for judicial review. Defendants counter that the EA and the FONSI are neither "agency actions" nor are they "final" because BOEM and BSEE must still issue a permit to any entity that wishes to use WSTs on the POCS. Defendants would have Plaintiffs wait until BOEM and BSEE issue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | | |

permits before challenging the agencies' actions in Court.[1] *See Mot.* 18:23–25 ("NEPA analyses themselves can only be challenged when they are relied upon to support a final agency action that is properly subject to judicial review.").

The Court first examines whether the EA and FONSI are "agency actions," and then, having found that they are, the Court examines whether the EA and FONSI are "final" agency actions subject to judicial review.

      *i.*      *Agency Action*

An "agency action" is the "whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). A "license" includes "the whole or a part of an agency permit . . . approval . . . or other form of permission." *Id.* § 551(8). Courts have interpreted the term "agency action" broadly to "cover comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 238 n.7 (1980)).

Plaintiffs assert that the EA and the FONSI are "agency actions" because they constitute an "approval or other form of permission." *EDC Opp.* 14:12–13. They point out that the EA and the FONSI selected among alternative proposals, and ultimately elected to "propose to allow the use of well stimulated treatments." *See Hall Decl.*, Ex. 1A, at 23. Defendants contend that the EA and FONSI are not approvals of any sort because they do "not actually approve anything—[they] merely serve[] as the procedural end point to close out this preliminary analysis." *Mot.* 14:1–3.

---

[1] There is some dispute among the parties as to whether BOEM and BSEE have already issued two permits for WSTs to DCOR, LLC for DCOR well S-55 and DCOR well B-35. *See EDC Opp.* 17:2–18:15. Defendants assert that the DCOR permits are not for WSTs because they authorize only "routine clean-up operations involving the use of acid at volumes that fell below the threshold for being considered 'well stimulation treatments.'" *Mot.* 16:2–11; *see also Settlement Agreement* (CV 15-1189), Dkt. # 43-1, at 9:9–10 ("Well stimulation treatment does not include routine well cleanout work"); *Settlement Agreement* (CV 14-981), Dkt. # 43-1, at 19:18–26 (same). Plaintiffs contend that even these routine clean-up operations can be environmentally harmful, and the "complaint specifically identifies these forms of acid use as part of the challenge," so Plaintiffs assert that these permits are necessarily encompassed in the Settlement Agreement and the moratorium on WSTs. *EDC Opp.* 18:2–12. The Court does not reach this issue for it finds that the EA and the FONSI are "final agency actions" subject to judicial review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | Date | July 14, 2017 |
|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | |

This issue is resolved by the Ninth Circuit's decision in *Laub v. U.S. Department of the Interior*, 342 F.3d 1080, 1088–89 (9th Cir. 2003). In *Laub*, the Ninth Circuit concluded that the CALFED Bay-Delta Program's EIS and ROD were agency actions because "the Preferred Program Alternative set out in the EIS will influence subsequent site-specific actions." *Id.* at 1088 (citing *Idaho Conservation League v. Mumma*, 956 F.3d 1508, 1520 (9th Cir. 1992)). Although CALFED's decision to conduct an EIS and issue a ROD is the opposite of the conclusion that BOEM and BSEE reached here when they decided to issue a FONSI, the FONSI similarly influences subsequent site-specific actions. *See Hall Decl.*, Ex. 1B. As the Ninth Circuit explained in *Laub*:

> Whenever a broad environmental impact analysis has been prepared and a subsequent narrower analysis is then prepared on an action included within the entire program or policy, the subsequent analysis need only summarize the issues discussed in the broader analysis and incorporate discussions from the broader analysis by reference. This is known as tiering. Tiered documents focus on issues specific to the subsequent action and rely on the analysis of issues already decided in the broader programmatic review. Absent new information or substantially changed circumstances, documents tiering from the CALFED Final Programmatic EIS/EIR will not revisit the alternatives that were considered alongside CALFED's Preferred Program Alternative nor will they revisit alternatives that were rejected during CALFED's alternative development process.

342 F.3d at 1088 (citing the ROD issued by CALFED).

BOEM and BSEE's finding of no significant environmental impact will similarly affect subsequent WST permitting decisions. Although BOEM and BSEE may conduct site-specific environmental analysis when issuing permits, BOEM and BSEE will never need to revisit their determination that WSTs have no significant environmental impact or their rejection of alternative plans. Therefore, as the Ninth Circuit recognized in *Laub*, the FONSI is a document that grants "approval or other form of permission" to the Proposed Action. *See id.*; *see also Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1355 (9th Cir. 1994) ("[P]laintiffs need not wait to challenge a specific project when their grievance is with the overall plan."). The EA and FONSI are therefore "license[s]" that qualify as "agency action[s]" as defined in the APA. *See* 5 U.S.C. § 551(8), (13).

   ii. *Final Agency Action*

In addition to disputing whether the EA and the FONSI are "agency actions," the parties dispute whether the EA and the FONSI are "*final* agency actions." *See Mot.* 17:17–18:3. An agency action is considered "final" if it (1) "mark[s] the consummation of the agency's decision

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | Date | July 14, 2017 |
|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | |

making process," and (2) is "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78 (the "*Bennett*" finality test). "[T]he core question is whether the agency has completed its decisionmaking, and whether the result of that process is one that will directly affect the parties." *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).

The Ninth Circuit has repeatedly held that final NEPA documents constitute final agency actions that are immediately justiciable to procedural challenges. *See, e.g.*, *Laub*, 342 F.3d at 1088–89 (treating an EIS/ROD as "final agency action"); *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1118 (9th Cir. 2010) (finding "no doubt" that a citizen may challenge a final NEPA decision); *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1503 (9th Cir. 1995) (holding a ROD as a final agency action); *accord Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 815 (8th Cir. 2006) (finding that a FONSI is a "final agency action" and noting that "[t]he Supreme Court has strongly signaled that an agency's decision to issue . . . an environmental impact statement is a 'final agency action' permitting immediate judicial review under NEPA"); *Highway J Citizens Group v. Mineta*, 349 F.3d 938, 958 (7th Cir. 2003) (stating that NEPA "documents are intended to be the culmination of an agency's environmental assessment"). In finding that the FONSI is a "final agency action," this Court therefore joins a long-line of cases that allow judicial review after an agency culminates its NEPA process.

Defendants attempt to distinguish this line of cases by citing to *Center for Biological Diversity v. Salazar*, 706 F.3d 1085, 1095–96 (9th Cir. 2013), and *Foundation on Economic Trends v. Lyng*, 943 F.2d 79, 86–87 (D.C. Cir. 1991), but the Court is not persuaded that either case controls here because neither case addresses the relevant point. In *Salazar*, for example, the Ninth Circuit concluded that NEPA review was not required when the Bureau of Land Management issued a new reclamation bond for mining operations in Arizona. 706 F.3d at 1095. The court did not hold, however, that the issue was not justiciable. Similarly, in *Foundation on Economic Trends*, the D.C. Circuit held that the plaintiff did not have standing to challenge what it deemed an "informational injury." 943 F.3d at 85. But the D.C. Circuit expressly excluded "the typical NEPA case," like this one, where a plaintiff faults a federal agency for failing to conduct an environmental review that "might change its mind and thereby avert damage to those interests." *Id.* at 84 ("In such cases, . . . the alleged injury arises directly from the agency's proposed action rather than from the agency's failure to create or consider an impact statement."). Neither *Salazar* nor *Foundation on Economic Trends* is therefore persuasive here.

Rather, Plaintiffs are correct that this case more closely resembles *Cure Land, LLC v. U.S. Department of Agriculture*, 833 F.3d 1223, 1231 (10th Cir. 2016); *accord Sierra Club*, 446

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | Date | July 14, 2017 |
|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | |

F.3d at 815. In *Cure Land*, the Tenth Circuit expressly held that a FONSI is a "final agency action" that satisfies § 702's finality requirement because it is the final step in the agency's NEPA decision-making process, and "there is no indication that the FONSI's conclusion . . . is tentative or interlocutory in nature." *Id.* The court also reasoned that "legal consequences" flow from the FONSI because "it establishes changes to the conservation program the agency may implement immediately." *Id.* It was the FONSI, and not any later action, that caused plaintiff's harm because the determination of the no significant environmental impact is the "procedural injury" that plaintiff advanced in its litigation. *Id.* (citing *Ohio Forestry Ass'n*, 523 U.S. at 737).

The same reasoning that applied in *Cure Land* applies to the EA and FONSI now before the Court. BOEM and BSEE's FONSI meets the first *Bennett* finality requirement because it is the final step in BOEM and BSEE's NEPA process and effectively lifts the moratorium on WSTs in the POCS. *See Bennett*, 520 U.S. at 177–78. Additionally, the agencies' determination was not equivocal. BOEM and BSEE concluded, "It is our determination that the Proposed would not cause any significant impacts." *Hall Decl.*, Ex. 1B, at 312. Although the agencies note that additional site-specific analysis may be required, the agencies concede that no additional environmental analysis is required on a programmatic level.

The FONSI also meets the second *Bennett* finality requirement because it determines "rights or obligations." *Bennett*, 520 U.S. at 177–78. By finding that WSTs have no significant environmental impact, BOEM and BSEE allowed the WST permitting process to proceed. This surely impacts legal rights, as indicated by the Intervenors' involvement in this suit, as well as the legal rights of Plaintiffs, who contend that they have incurred a procedural injury by BOEM and BSEE's alleged failure to consider certain factors in their environmental analysis.

Having thus reviewed the relevant case law, the Court finds ample precedent for concluding that the EA and FONSI are "final agency action[s]" subject to judicial review. Defendants' motion to dismiss Plaintiffs' NEPA and CZMA claims is therefore DENIED.

B. <u>ESA Claims</u>

The EDC and CBD Plaintiffs additionally allege that federal Defendants violated section 7(a)(2) of the ESA by failing to consult the Services before issuing their completed EA and FONSI. Section 7(a)(2) of the ESA requires federal agencies to ensure that any action that they "authorize, fund, or carry out is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of designated critical habitat." *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.02 (definition of an "action"), 402.03. The ESA uses the term "action agency" to refer to the agency that is taking the action that requires consultation. Here, BOEM and BSEE are the "action agencies."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | Date | July 14, 2017 |
|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | |

Although the ESA does not require action agencies to reach a certain substantive outcome, the ESA mandates procedures that an action agency must follow before authorizing, funding, or carrying out "actions." If a proposed action "may affect" a listed species or critical habitat, the action agency must, at least, informally consult with the Services. *See* 50 C.F.R. § 402.13(a). An informal consultation includes discussions and correspondence between the action agency and the Services, and may include a Biological Assessment prepared by the action agency for the Services' review. *Id.* §§ 402.13, 402.14(c); 16 U.S.C. § 1536(c). If during informal consultation, the action agency and the Services concur that the action is not likely to adversely affect a listed species or critical habitat, no further consultation is necessary. 50 C.F.R. §§ 402.13(a), 402.14(b)(1). However, if the action agency or the Services determines that the action is "likely to adversely affect" listed species or critical habitat, the agencies then engage in "formal consultation." *Id.* §§ 402.13(a), 402.14(a)–(b). Formal consultation leads to the issuance of a "Biological Opinion" or "BiOp" by the Services that assesses the likelihood of "jeopardy" to the species or "destruction or adverse modification" of critical habitat. *Id.* § 402.14(g)–(h).

Defendants contend that Plaintiffs' ESA claim is not ripe and moot. First, Defendants assert that the ESA claim is not ripe because BOEM and BSEE have not yet taken an "action" that triggers the ESA. Second, Defendants argue that the ESA claim is moot because BOEM and BSEE sent Biological Assessments to the Services in March 2017, and so have already begun the consultation process required by ESA. The Court first addresses ripeness and then turns to mootness.

        *i.*     *Ripeness*

Defendants challenge the ripeness of Plaintiffs' ESA claim on two grounds. First, they argue that the claim is "unripe" because BOEM and BSEE have not yet taken an "action" that would require ESA consultation. *See Mot.* at 22. Second, the federal Defendants assert that adjudication of Plaintiffs' ESA challenge at this point is improper because future site-specific consultations might result in mitigation or elimination of any potential harm. In response, Plaintiffs point to the EA and the FONSI, and assert that BOEM and BSEE were required to consult the Services before issuing these determinations. Because they allege procedural injuries, Plaintiffs additionally contend that their claims are ripe now.

The ESA requires consultation with the Services for any "agency action" that "may affect" a listed species or critical habitat. 16 U.S.C. § 1536(a)(2). An "action" for ESA purposes is "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies," and includes the "granting of licenses" and "actions directly or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | | |

indirectly causing modifications to the land, water or air." 50 C.F.R. § 402.02. The Ninth Circuit assesses the "action" inquiry under the ESA in two steps: "First, we ask whether a federal agency affirmatively authorized, funded, or carried out the underlying activity. Second, we determine whether the agency has some discretion to influence or change the activity for the benefit of a protected species." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1020–21 (9th Cir. 2012) (en banc). "There is 'agency action' whenever an agency makes an affirmative, discretionary decision about whether, or under what conditions, to allow private activity to proceed." *Id.* at 1011.

The record in this case shows that the EA and the FONSI qualify as "action" under the ESA. In the FONSI, BOEM and BSEE "affirmatively authorize[d]" private entities to proceed with WSTs on the POCS, reasoning that such activities would not have a significant environmental impact on human activities. *See Hall Decl.*, Ex. 1B. Although private entities must still obtain permits from BOEM and BSEE to conduct site-specific WSTs, the EA and FONSI set an affirmative future direction for these activities and set the course for how these activities are conducted. *See Karuk Tribe of Cal.*, 681 F.3d at 1011 (treating a "Notice of Intent" to authorize mining activities as an "agency action" because the notice described "under what conditions" mining could proceed on the Klamath River). Plaintiffs have also shown that WSTs "may affect" twenty-five threatened or endangered species, and the Biological Assessments that Defendants submitted to the services confirm as much. *See Mitchell Decl.*, Exs. 2, 5. Moreover, it is clear that BOEM and BSEE had "some discretion" over how to supervise WSTs, given that the EA and FONSI presented and dismissed alternative options, including safety measures that could have changed how WSTs were conducted. Indeed, having now issued its FONSI, there is no opportunity for BOEM or BSEE to revisit those alternatives on a programmatic scale.

The Court similarly rejects Defendants' arguments that challenges to the EA and the FONSI are not procedurally ripe. "The doctrine of ripeness prevents courts from becoming involved in abstract questions which have not affected the parties in a concrete way." *S. Cal. Edison Co. v. FERC*, 770 F.2d 779, 785 (9th Cir. 1985). To determine ripeness in an agency context, courts consider:

> (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 940 (9th Cir. 2006) (applying this test to an ESA claim). Judicial intervention does not interfere with further administrative action when an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | | |

agency's decision is "at an administrative resting place." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 977 (9th Cir. 2003). Further, courts have held that "no additional factual development is necessary after a procedural injury has occurred." *Cottonwood Envtl. Council v. U.S. Forest Serv.*, 789 F.3d 1075, 1084 (9th Cir. 2015) (citing *Ohio Forestry Ass'n*, 523 U.S. at 737 (holding that a procedural dispute is ripe "at the time the [procedural] failure takes place")).

The Court finds Plaintiffs' ESA claim ripe for judicial review. Plaintiffs do not argue for a particular substantive result, but rather Plaintiffs allege that BOEM and BSEE failed to comply with the procedural requirements of the ESA when they did not consult with the Services before issuing the EA and FONSI. Because courts have held that plaintiffs asserting procedural injuries "may complain of that failure at the time the failure takes place" and "the claim can never get riper," *Ohio Forestry Ass'n*, 523 U.S. at 737, Plaintiffs have incurred injury and their claim is ripe now. Moreover, the Court is confident that judicial review at this juncture would not interfere with further administrative action because BOEM and BSEE have reached "an administrative resting place." *Citizens for Better Forestry*, 341 F.3d at 977. The agencies are at a "resting place" because they have not yet issued a significant number, if any, permits for WSTs but have definitively concluded that WSTs do not have any significant environmental effects. Finally, the Court does not need to wait for "further factual development" because the procedural injury, if any, has already occurred.

In sum, the Court concludes as a matter of law that the EA and the FONSI are "action" under the ESA. This holding comports with other Ninth Circuit cases that have come to the same result under factually analogous circumstances. *See P. Rivers Council v. Thomas*, 30 F.3d 1050, 1051 (9th Cir. 1994) (concluding that a programmatic document that "set out guidelines" for forest management was an ESA-triggering action); *Wash. Toxic Coal. v. Envtl. Protection Agency*, 413 F.3d 1024, 1031–33 (9th Cir. 2005) (concluding that the approval and registration of certain pesticides was subject to ESA consultation because it approves of certain practices, even though the implementation of the pesticides might involve additional approvals).

      ii.    *Mootness*

Defendants next contend that Plaintiffs' ESA claim is moot because Defendants submitted Biological Assessments to the Services the week before they filed their motion to dismiss. *See Mot.* 24:10–25:20. Plaintiffs counter that their ESA claim is not moot because the Biological Assessments are incomplete, and because there is still action that the Court can take to remedy the Plaintiffs' injuries. *See EDC Opp.* 22:18–25:20; *CBD Opp.* 20:14–25:24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | | |

  The basic question in determining mootness is "whether there is a present controversy as to which effective relief can be granted." *N.W. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (citing *United States v. Geophysical Corp.*, 732 F.2d 693, 698 (9th Cir. 1986)); *see also W. Oil & Gas Ass'n v. Sonoma Cty.*, 905 F.2d 1287, 1290 (9th Cir. 1990) (distinguishing the ripeness inquiry, which asks "whether there is yet any need for the court to act" from the mootness inquiry, which asks "where there is anything left for the court to do"). "[I]n deciding a mootness issue, 'the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be *any* effective relief." *N.W. Envtl. Def. Ctr.*, 849 F.2d at 1244–45. Because of this standard, the burden of demonstrating mootness is a "heavy" one. *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

  Plaintiffs point to at least two steps that the Court can still take to provide effective relief to Plaintiffs even though Defendants have already submitted Biological Assessments to the Services. First, Plaintiffs contend that there remains a "live controversy" over whether Defendants must initiate formal consultation that results in a BiOp, and the Court could still order the federal Defendants to initiate such a process. *See Or. Nat. Desert Ass'n v. Tidwell*, 716 F. Supp. 2d 982, 995 (D. Or. 2010) (holding that claim is not moot "in light of the fact that federal defendants have yet to demonstrate that *formal* consultation has been properly initiated").

  Second, Plaintiffs argue that their claim as to Defendants' failure to initiate consultation is still live because BOEM and BSEE's Biological Assessments are incomplete. *See EDC Opp.* 23:19–25:7. Plaintiffs fault the Biological Assessments for (1) failing to assess the full range of activities challenged in Plaintiffs' complaint, including how toxic chemicals will affect certain species and the potential impact of large-scale oil spills; and (2) for omitting any consideration of the effects on the scalloped hammerhead shark. *See id.* When plaintiffs have been able to identify such failures in ESA consultations in the past, courts have not rendered plaintiffs' claims moot because the Court can still offer effective relief by requiring defendants to assess the full range of possible effects. *See, e.g.*, *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 782 (9th Cir. 2014) (ruling that a consultation claim was not moot where a BiOp did not discuss certain impacts to certain species); *Cal. Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1114 n.9 (C.D. Cal. 2015) (requiring defendants to engage in full consultation that addresses additional effects).

  Defendants do not offer a convincing retort to Plaintiffs' claims. *See Reply* 10:7–12:23. Although the Court has no reason to doubt that "formal consultation could still occur" and that BOEM and BSEE will continue to consult the Services, *id.* 11:10–13, this does not mean that there is nothing left for the Court to do. Defendants offer no reason why the Court could not still

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-8418 PSG (FFMx) | Date | July 14, 2017 |
|---|---|---|---|
| Title | Envtl. Def. Ctr. *et al.* v. Bureau of Ocean Energy Mgmt. *et al.* | | |

require BOEM and BSEE to conduct a more complete Biological Assessment, or to engage in formal consultation, if warranted.

Because Plaintiffs have shown that the Court may still grant "effective relief," the Court DENIES Defendants' motion to dismiss the ESA claim on the ground that it is moot.

IV.   Conclusion

The Court DENIES Defendants' motions to dismiss. It concludes that the EA and FONSI are "final agency action[s]" that make Plaintiffs' NEPA and CZMA claims subject to judicial review under § 702 of the APA. Additionally, the Court concludes that Plaintiffs' ESA claim is ripe because BOEM and BSEE have already taken an "action" that triggered the ESA's consultation requirements and because the Court can still take meaningful action to remedy Plaintiffs' injuries even though Defendants have submitted Biological Assessments to the Services.

**IT IS SO ORDERED**.