BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA  90025-0509
Telephone:  310.820.8800
Facsimile:  310.820.8859

L. Poe Leggette (Admitted *Pro Hac Vice*)
Email:  pleggette@bakerlaw.com
Mark S. Barron (Admitted *Pro Hac Vice*)
Email:  mbarron@bakerlaw.com
Emily B. Thomas (Admitted *Pro Hac Vice*)
Email:  ethomas@bakerlaw.com
BAKER & HOSTETLER LLP
811 Main Street
Suite 1100
Houston, TX  77002-6111
Telephone:  713.751.1600
Facsimile:  713.751.1717

*Attorneys for Defendant-Intervenor*
DCOR, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ENVIRONMENTAL DEFENSE CENTER, et al.,

       Plaintiffs,

       v.

BUREAU OF OCEAN ENERGY MANAGEMENT, et al.,

       Defendants,

AMERICAN PETROLEUM INSTITUTE, et al.,

       Defendant-Intervenors.

Case No. 2:16-CV-08418-PSG-FFMx

**NOTICE OF MOTION AND MOTION FOR PARTIAL AMENDMENT OF JUDGMENT OR PARTIAL RELIEF FROM ORDER ON BEHALF OF DEFENDANT-INTERVENOR DCOR, LLC; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date:   March 4, 2019
Hearing Time:   1:30 p.m.
Courtroom:   6A
Judge:   Hon. Philip S. Gutierrez

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on March 4, 2019 at 1:30, or as soon thereafter as the matter may be heard, before the Honorable Philip S. Gutierrez, in the above-titled Court, Courtroom 6A of the First Street Federal Courthouse, 350 West 1st Street, Los Angeles, CA 90012, DCOR, LLC ("DCOR") will, and hereby does, move for post-judgment relief, in the form of a partial amendment of this Court's December 13, 2018 judgment (the "Judgment"), pursuant to Fed. Rule of Civil Procedure 59(e), or partial relief from the Judgment, pursuant to Fed. Rule of Civil Procedure 60(b) in these three consolidated cases (the "Consolidated Action").

This Motion for Post-Judgment Relief (the "Motion") is based on:  this Notice of Motion, the Motion, and the attached Memorandum of Points and Authorities; the Declaration of Alan C. Templeton, as well as the declaration of David Cohen; the argument of counsel, all pleadings and papers on file in this action; and upon such other matters as may be presented to the Court at the hearing on this Motion or before the Court's decision.

This Motion is made following conferences with counsel for each Party, pursuant to Local Rule 7-3.  These conferences took place from January 3, 2019 to January 9, 2019. The Parties take the following positions:

(1)     The Federal Defendants stated they take no position on this Motion at this time and reserve their position until after such Motion is filed.  They added that due to the lapse in appropriations caused by the federal shutdown, if a response from the Federal Defendants becomes pending they will seek a stay of this case, for as many days as the lapse in appropriations lasts.[1]

---

[1]     As of the date of filing this Motion, the federal government shutdown is still in effect.  Considering the Federal Defendants' position, DCOR suggests that a stay of this case and all related deadlines may be appropriate, because the Department of Justice is representing the United Sates agencies who are parties in this case.  Such a stay

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(2)    Plaintiffs State of California, Environmental Defense Center, Santa Barbara Channelkeeper, Center for Biological Diversity, and Wishtoyo Foundation stated they plan to oppose this Motion.

(3)    Defendant-Intervenors American Petroleum Institute and Exxon Mobil Corporation take no positions on this Motion.

Respectfully submitted this 10th day of January, 2019

BAKER & HOSTETLER LLP

By:    */s/ L. Poe Leggette*
       Poe Leggette (Admitted *Pro Hac Vice*)

       *Attorneys for Defendant-Intervenor*
       *DCOR, LLC*

Michael R. Matthias
Mark S. Barron (Admitted *Pro Hac Vice*)
Emily B. Thomas (Admitted *Pro Hac Vice*)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

would be consistent with actions of several other Federal District Courts that have already entered omnibus stays. *See, e.g.*, D. Wyo., M.D. Pa., and W.D. Pa.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

## Contents

I.    INTRODUCTION ............................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............. 2

III.  ARGUMENT ................................................................................. 8

    A.   It is Proper for the Court to Reconsider its Injunction as Pertains to DCOR, Because it Failed to Consider the Unique Harm and Impact of the Injunction on DCOR When Entering its Order ............. 8

    B.   The Court Erred in Basing the Injunction Simply on the Federal Defendants' Failure to Provide a Consistency Determination to the California Plaintiffs ................................................................. 9

    C.   A Reconsideration of the *Monsanto* Factors, Taking into Account the Injunctions' Effects on DCOR, shows that DCOR Should be Exempt from the Injunction ....................................................... 11

        1.   DCOR will Suffer Irreparable and Unrecoverable Harm if the Court does not Exempt DCOR from the Injunction .......... 13

        2.   The Balancing of Equities Shows that DCOR's Hardships far Outweigh any Benefit to the Plaintiffs from Barring Consideration and Approval of DCOR's Permits ................... 15

        3.   It Would be a Disservice to the Public Interest to Subject DCOR to the Injunction ........................................................ 17

IV.   CONCLUSION ............................................................................ 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Freedom Forge Corp.*,
204 F.3d 475 (3d Cir.2000) ........................................................... 15

*Amoco Prod. Co. v. Village of Gambell*,
480 U.S. 531 (1987) ............................................................ 10, 11, 19

*California v. Azar*,
911 F.3d 558, 2018 WL 6566752 (9th Cir. 2018) ........................... 13

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ................................................................. 12, 19

*F.T.C. v. Lab. Corp. of Am.*,
No. SACV 10-1873 ......................................................................... 16

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867 (9th Cir.2014) ..................................................... 12, 16

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ....................................................... 13

*Mantle Ranches, Inc. v. U.S. Park Serv.*,
950 F. Supp. 299 (D. Colo. 1997) .................................................... 8

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ............................................. 9, 10, 11, 12, 14, 19

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) ............................................................. 8

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ....................................................... 14

*Trump v. Int'l Refugee Assistance Project*,
—U.S.—, 137 S. Ct. 2080 (2017) .................................................. 17

*Turner v. Burlington N. Santa Fe R.R. Co.*,
338 F.3d 1058 (9th Cir. 2003) ......................................................... 8

*Watt v. Energy Action Educ. Fdn.*,
    454 U.S. 151 (1981) ................................................................. 19

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ................................................................. 10

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ....................................1, 2, 3, 4, 5, 7, 10, 11, 14, 16

**Statutes**

16 U.S.C. § 1456(c)(1) ..............................................1, 5, 9, 11, 14

43 U.S.C. §1351(a) ................................................................ 4

Alaska National Interest Lands Conservation Act ................................ 10

ANILCA ....................................................................... 19

Clean Water Act ............................................................... 10

CZMA .........................................................1, 4, 5, 8, 11, 13, 14, 19

National Environmental Policy Act.............................................. 1

OCS Lands Act Section 25(i) .................................................... 4

**Rules**

FRCP 59(e) .................................................................. 8, 9

FRCP 60(b) .................................................................. 8, 9

FRCP 60(c)(2) ................................................................. 9

Local Rule 7-18(c) ............................................................. 9

**Other Authorities**

Status of Intervenor, 7C Fed. Prac. & Proc. Civ. § 1920 § 1920 (3d
    ed.) ..................................................................... 13

11 Fed. Prac. & Proc. Civ. § 2810.1 § 2810.1 (3d ed.) .......................... 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION FOR PARTIAL AMENDMENT OF JUDGMENT
OR PARTIAL RELIEF FROM ORDER ON BEHALF OF DEFENDANT INTERVENOR DCOR, LLC;
MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:16-CV-08418-PSG-FFMX

**MEMORANDUM OF POINTS OF AUTHORITIES**

## I.   INTRODUCTION

DCOR, LLC ("DCOR") asks the Court to modify in part the judgment entered on December 13, 2018, in these consolidated cases ("the Judgment"). DCOR asks that the Judgment's injunction (the "Injunction") be modified to allow the Federal Defendants to process and, if otherwise in compliance with law, approve two applications for permit to modify ("APMs").  The two APMs would authorize DCOR to conduct hydraulic fracturing on two wells on Platform Gilda, 8.9 miles from the California coast and 5.9 miles outside of California's coastal zone established under the Coastal Zone Management Act ("CZMA").  Except as to these two APMs, the Injunction entered against the Federal Defendants would otherwise remain in place.

DCOR respectfully submits the Court did not consider the equities and balance of harms as to DCOR.  As shown below, DCOR will continue to suffer unrecoverable financial loss, for which there is no remedy in damages, unless DCOR's motion is granted.   Under DCOR's proposed modification of the Judgment, on the other hand, the California Plaintiffs will continue to receive what they sought in the litigation:  their "right under the CZMA to receive and be given an opportunity to review a consistency determination under 16 U.S.C. § 1456(c)(1)."  ECF 126, Order ("Order") at 40.

This modification of the Judgment is compelled by *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32-33 (2008).  There the lower courts had determined the Navy had failed to prepare an environmental impact statement under the National Environmental Policy Act ("NEPA") before conducting certain sonar training exercises that allegedly could harm marine mammals.   With complications not relevant here, the Ninth Circuit Court of Appeals affirmed a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

preliminary injunction allowing the Navy to continue testing subject to certain restrictions, two of which the Navy challenged before the Supreme Court. The Supreme Court agreed the lower courts had abused their discretion by imposing the restrictions.

> Given that the ultimate legal claim [by plaintiffs] is that the Navy must prepare an EIS, not that it must cease sonar training, there is no basis for enjoining such training in a manner credibly alleged to pose a serious threat to national security. This is particularly true in light of the fact that the training has been going on for 40 years with no documented episode of harm to a marine mammal."

*Id.* at 32-33.

Here, the California Plaintiffs do not seek to end hydraulic fracturing, but simply to receive a consistency determination from the Federal Defendants. Given that hydraulic fracturing has occurred on federal and state offshore platforms for nearly 40 years with no documented episode of harm, there is no basis to require DCOR to continue to suffer irreparable injury given the California Plaintiffs' long acceptance of this activity.

Similarly, this modification will not otherwise harm the Plaintiffs as a group, because the Federal Defendants must still complete any consultation with the Fish and Wildlife Service ("FWS"), as specifically pertains to these two APMs, to the extent required under the ESA.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2017, DCOR moved to intervene in this action. ECF 45. DCOR provided a detailed factual description of its extensive interests in the POCS and its lengthy history of utilizing WSTs in the region. *See* ECF 45, at 3, l. 13 – 8, l. 5.

DCOR highlighted how its unique position and interests differed from the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

other Defendants and intervenors, because "DCOR has invested extensive amounts of money, time, and manpower into the effective use of WSTs, including hydraulic fracturing, on its Pacific OCS wells." *Id*. at 12, ll. 11-13.  Specifically, DCOR explained that hydraulic fracturing has been conducted on Platform Gilda in the Pacific OCS, a DCOR Platform, regularly since 1994. *Id*. at ll. 19-21.

Further, DCOR's predecessor operators and other operators have used WSTs on platforms in the Pacific OCS Region since 1982. *Id*. at ll. 21-23.  With respect to Platform Gilda, hydraulic fracturing was proposed in the Update to the Plan of Development filed by Unocal in 1985 for the Santa Clara Field.  *Id*. at ll. 23-25. DCOR's predecessors conducted ten operations involving hydraulic fracturing in that Field between 1986 and 2001. *Id*. at ll. 25-26.

DCOR also clarified that its ability to utilize hydraulic fracturing in a timely, safe, and effective manner, through the BOEM and BSEE permitting process, is a vital – potentially existential – element of their activities in the POCS, stating:

> In late 2014 and early 2015 DCOR successfully completed hydraulic fracturing stimulations on two recently re-drilled wells, S-33 and S-75, under permits thoroughly reviewed by the regulating agencies responsible for these activities.  Prior to this time the two wells had no value. After re-drilling and hydraulically stimulating these two wells, their value rose to approximately $30,000,000, including $5,000,000 of value to the royalty interest in the wells owned by the United States Government.

*Id*. at p. 6, l. 26-p. 7, l. 6.  Thus, as DCOR explained, if the Plaintiffs were to succeed in acquiring an injunction, it would cause DCOR great potential harm, because its Pacific OCS Region assets are 70% of its overall base of assets, and hydraulic fracturing is a key element of DCOR's Pacific OCS development strategy. *Id*. at p. 7, l. 20-p. 8, l. 3.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Finally, DCOR explained that its factual position provided it a unique

2  defense to the State's claims insistence on applying CZMA review to WST activity

3  in the Pacific OCS, explaining:

4       DCOR is exempt from key provisions on which the State plaintiffs

5       rely. Section 25(i) of the OCS Lands Act adopted provisions requiring

6       lessees to file consistency certifications if they file revisions to

7       previously approved plans, and those revisions, if significant, are

8       subject to consistency certifications and review under CZMA Section

9       307(c)(3)(B). However, Section 25(i) does not apply to development

10      and production plans for "any area" of the OCS where oil or gas had

11      been discovered in paying quantities before September 18, 1978. 43

12      U.S.C. §1351(a).

13  *Id.* at 12 ll. 17-26.

14      On July 11, 2017, this Court granted DCOR's motion to intervene in this

15  matter, recognizing that "DCOR has an interest in oil and gas platforms on the

16  Pacific Outer Continental Shelf and seeks permits from the Bureau of Ocean

17  Energy Management and the Bureau of Safety and Environmental Enforcement to

18  conduct hydraulic fracturing on those platforms." ECF 71, at 1.

19      On February 12, 2018, the Plaintiffs filed their respective motions for

20  summary judgment. ECF 95, 96, 97. Although the Plaintiffs' opening briefs made

21  general requests that the Court enjoin the Federal Defendants from certain

22  activities, they did not conduct the multi-factor analysis associated with seeking

23  injunctive relief. *See id.* Thus, none of the ensuing summary judgment filings

24  contained any analysis of the equities associated with the entry of an injunction, let

25  alone a response to DCOR's earlier explanation of the harsh consequences an

26  injunction would have on its interests. *See* ECF 101, 102, 106, 107, 108, 109, 110,

27  111, 112, 113, 119, 120, 121.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

On November 9, 2018 the Court entered its Order granting in part, and denying in part, the pending cross-motions for summary judgment. On December 13, 2018, the Court entered its Judgment, finalizing the Order. The Court's ruling included the following Injunction:

> Plaintiffs are entitled to injunctive relief, and the Federal Defendants are ORDERED to refrain from approving any plans or permits (*e.g.*, Development and Production Plans, Applications for Permits to Drill, Applications for Permits to Modify) for the use of well stimulation treatments on the Pacific Outer Continental Shelf unless and until they (1) complete consultation with the FWS under the ESA, and (2) complete the CZMA process under 16 U.S.C. § 1456(c)(1) for the proposed action described in the Final Programmatic Environmental Assessment of the Use of Well Stimulation Treatments on the Pacific Outer Continental Shelf dated May 2016.

ECF 132, at 3.

This Injunction has immediate and harmful ramifications for DCOR. As explained in its Motion to Intervene, in 2016, DCOR submitted one APM to BSEE notifying it of its intent to use hydraulic fracturing in one well on Platform Gilda, S-62. ECF 45, at p. 7, ll. 14-16. Further, on January 10, 2019, DCOR submitted another permit for review. Dec. of David Cohen, ¶ 8. DCOR's two pending APMs propose operational plans that are consistent with the WST treatments that DCOR and its predecessors in the Pacific OCS previously conducted pursuant to federal agency approval. *Id*. at ¶ 9. Prior to this litigation, approval of DCOR's APMs for WST use, including for hydraulic fracturing treatments, in the Pacific OCS took an average of approximately three weeks. Id. at 15. Now that the Injunction is in place, the Federal Defendants are prohibited from considering and approving these APMs.

5

If BSEE cannot review and approve the pending APMs, such that DCOR is unable to hydraulically fracture Platform Gilda, S-62 and S-28, then these wells will lack any value or utility.  Thus, DCOR will have to cease operations on these wells indefinitely. Dec. of Alan C. Templeton, ¶ 8.  This will result in DCOR immediately foregoing projected average annual net revenues of $7,400,000 over each of the first five (5) years, totaling a loss in present value of $29,750,000, which will cause a corresponding projected revenue loss to the United States from lost royalties over the same 5-year period totaling approximately $6,200,000, and a loss in present value of $5,000,000.  *Id.* at ¶ 9.

Further, DCOR plans its operations in batches of wells.  Under normal circumstances, after the successful stimulation of Platform Gilda, S-62 and S-28, it would be practical and prudent to conduct hydraulic fracturing operations on eight additional wells in Platform Gilda across the years 2020 to 2022, such that its operations will not exceed four hydraulic fracturing treatments in any one year and will average fewer than three per year.  *Id.* at ¶ 10.  Thus, if DCOR continues to be unable to have its WST APMs reviewed, processed, and approved in the Pacific OCS, then it will have no choice but to consider abandoning its operations on Platform Gilda prematurely.  This would have a negative impact across all of DCOR's operations in the Pacific OCS, given that Platform Gilda is currently DCOR's most valuable asset in the Pacific OCS, and DCOR can only realize the full value of this asset through its proposed use of WST activities on Platform Gilda.  *Id.* at ¶ 11.

The failure of DCOR to fully realize the value of Platform Gilda through its proposed WST activities would result in a cumulative loss of projected revenue to DCOR of approximately $174,000,000, and a corresponding projected revenue loss to the United States from lost royalties of approximately $29,000,000.  *Id.* at ¶ 12.  DCOR has no legal avenue from which it can attempt to recover these lost

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  funds.  Moreover, DCOR does not anticipate that any other operator would want to
2  acquire interests in these assets without the ability to utilize WSTs, as a number of
3  the wells within these assets would otherwise lack any measurable value or utility.
4  *Id*. at ¶ 13.

5       The pending APMs do not pose a risk to the California coastal zone or
6  California's interests.  In fact, WST use has a long history in the Pacific OCS, as
7  well as in California state waters in the California coastal zone.  *Id*. at 10.  The
8  California Council on Science and Technology ("CCST") has indicated that an
9  average of around 18 wells a year are hydraulically fractured in the California
10  coastal zone.  ECF 107, p. ll. 20-23.  Similarly, the Argonne Final Programmatic
11  EA estimated that across all operators, California state agencies have approved and
12  allowed 117 hydraulic fracturing treatments for the period January 2002 to
13  December 2013, or ten hydraulic fracturing treatments per year in the California
14  coastal zone.  *See* Dec. of David Cohen, ¶ 10.

15       The APMs are consistent with WST treatments that DCOR and its
16  predecessors conducted in California state waters (and the coastal zone) with State
17  of California approval.  *Id*.  at 9.  In addition to its extensive assets in the federal
18  Pacific OCS region, DCOR itself has drilled and utilized WSTs in California state
19  waters in the coastal zone.  *Id*. at 11.  Specifically, in 2010 and 2011, DCOR
20  conducted fourteen safe and effective hydraulic fracturing treatments in the
21  California coastal zone, pursuant to all relevant state agency approvals, including
22  the California State Lands Commission and California Division of Oil, Gas, and
23  Geothermal Resources ("DOGGR").  *Id*. at 12.  The hydraulic fracturing
24  treatments DCOR conducted in California state waters in the coastal zone are
25  materially the same in scope, volume, and method to what DCOR is proposing in
26  its two APMs currently pending with BSEE for hydraulic fracturing in the Pacific
27  OCS.  *Id*. at ¶ 14.

28

7

1    ## III.   <u>ARGUMENT</u>

2        The Injunction shall cause DCOR to suffer unrecoverable and irreparable

3    harm.   However, when the Court conducted its injunction analysis, it did not

4    consider how the equitable factors apply to DCOR in its pursuit of permits.   Thus,

5    DCOR requests this Court partially amend its Injunction under Rule 59(e), or

6    otherwise provide DCOR partial relief from the Injunction, pursuant to Rule 60(b),

7    thereby allowing DCOR to pursue its APMs on their own merits.   Such relief is

8    needed to protect DCOR from irreparable harm that further delay will cause.

9        DCOR is not seeking to avoid any obligations it might have under ESA and

10   CZMA respecting its APMs.   Nor is DCOR asking to relieve the Federal

11   Defendants from their obligations under the Injunction, except to the extent

12   necessary to allow the government to review, process, and approve DCOR's APMs

13   on their own merits, while the government is either challenging or complying with

14   the Injunction.

15   ### A.   **It is Proper for the Court to Reconsider its Injunction as Pertains to DCOR, Because it Failed to Consider the Unique Harm and Impact of the Injunction on DCOR When Entering its Order**

16

17       A district court may reconsider a "judgment under either Rule 59(e) (motion

18   to alter or amend a judgment) or Rule 60(b) (relief from judgment)." *Sch. Dist. No.*

19   *1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).

20       As applicable here, Rule 59(e) permits a motion for amendment of

21   judgment, i.e. a motion for reconsideration, (1) to correct manifest errors of law or

22   fact upon which the judgment is based; and (2) to prevent manifest injustice.   *See*

23   *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003);

24   *see also Mantle Ranches, Inc. v. U.S. Park Serv.*, 950 F. Supp. 299, 300 (D. Colo.

25   1997) (granting a Rule 59(e) motion in part, where National Park Service showed

26   that the judge inaccurately held that illegal ATV use was not occurring on park

27   land, such that the injunction needed to be expanded to cover such existing use).

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

8

NOTICE OF MOTION AND MOTION FOR PARTIAL AMENDMENT OF JUDGMENT
OR PARTIAL RELIEF FROM ORDER ON BEHALF OF DEFENDANT INTERVENOR DCOR, LLC;
MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:16-CV-08418-PSG-FFMX

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Rule 59(e) permits a party to seek a "substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment." § 2810.1, 11 Fed. Prac. & Proc. Civ. § 2810.1 (3d ed.)

Local Rule 7-18(c) also allows relief in the form of judicial reconsideration. Specifically, "[a] motion for reconsideration of the decision on any motion may be made only on the grounds of…a manifest showing of a failure to consider material facts presented to the Court before such decision.  No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."[2] C.D. Cal. L.R. 7-18(c).

In the alternative, DCOR seeks partial relief from the Injunction under Rule 60(b), which allows for relief upon a showing of "mistake, inadvertence, surprise, or excusable neglect," and, under subpart (6), for "any other reason justifying relief."  Relief under Rule 60(b) "does not affect the judgment's finality or suspend its operation." FRCP 60(c)(2).

In this instance, a partial modification of the injunction to allow BOEM and BSEE to consider and approve DCOR's existing permit applications is proper. The Injunction did not consider the effect the Injunction would have on DCOR, though facts in the administrative record and briefed to the Court showed the harm to DCOR substantial and the harm to the Plaintiffs slight.  Further, none of the Plaintiffs attempted to meet their burden to support the Injunction in oral or written argument on the *Monsanto* Factors.

**B.    The Court Erred in Basing the Injunction Simply on the Federal Defendants' Failure to Provide a Consistency Determination to the California Plaintiffs**

Even when a court determines that a federal agency has failed to follow a procedure required by law, an injunction is not automatic.  "An injunction is a

---

[2]    Because of this Local Rule, DCOR does not repeat the argument that 16 U.S.C. § 1456(c)(1) does not apply to Federal Defendants' action here.  Nor does DCOR abandon it, however.

9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (holding district court had abused its discretion in enjoining agency from allowing the planting of genetically engineered alfalfa seeds). "The grant of jurisdiction [to a court] to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (reversing court of appeals for enjoining the Navy's discharge of ordinance without a Clean Water Act permit).

On at least three occasions, the Supreme Court has reversed courts that held that the mere failure to obtain a permit or prepare an analysis was enough to support the grant of an injunction. In *Weinberger*, when the lower court found that the Navy was discharging ordnance without a required permit under the Clean Water Act, it ordered the Navy to apply for a permit, but allowed the discharge to proceed in the interim because the evidence showed the discharge was not harming water quality. When the court of appeals ordered that an injunction issue, the Supreme Court determined that the appeals court had erroneously focused on the integrity of the permit process instead of on the integrity of water quality. 456 U.S. at 314-15.

In *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987), the Supreme Court reversed the Ninth Circuit for imposing an injunction based solely on the federal agency's failure to prepare a subsistence impact analysis under the Alaska National Interest Lands Conservation Act ("ANILCA"). It noted the district court had found that offshore oil and gas activities would not significantly restrict subsistence uses, and that the Ninth Circuit had based its injunction on the presumption that irreparable harm results when an agency fails to evaluate the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

impacts of a proposed action. *Id*. at 544-45. And in *Winter*, discussed above, the Court held it an abuse of discretion for the lower court to allow the failure to prepare an environmental impact statement to trump other equitable considerations. 555 U.S. at 32-33 (citing 40 years of sonar training with no documented case of harm to marine mammals).

Here, the dominant consideration in granting the Injunction was the Court's finding that "the California Plaintiffs have suffered an irreparable injury in being denied their right under the CZMA to ... be given an opportunity to review a consistency determination under 16 U.S.C. § 1456(c)(1)." ECF 126, at 40. But the same was said about the Navy's failure to obtain a permit, or Interior's failure to analyze impacts on native subsistence, or the Navy's failure to prepare an EIS before sonar testing. Yet in all cases the Supreme Court found the lower courts to have abused their discretion when entering injunctions on that basis. The Court's finding here cannot be distinguished from the Ninth Circuit's rule, reversed by *Village of Gambell*, that irreparable harm is presumed from the agency's failure to follow a required procedure intended to protect environmental interests. The Court should reconsider its application of the *Monsanto* factors, to which we now turn.

### C.   A Reconsideration of the *Monsanto* Factors, Taking into Account the Injunction's Effects on DCOR, shows that DCOR Should be Exempt from the Injunction

As set forth in the Order, "the general rule is that *a plaintiff* seeking an injunction *must demonstrate* that (1) it has suffered an irreparable injury, (2) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) that a remedy in equity is warranted, *taking into account the balance of the hardships*, and (4) that the public interest would not be disserved by a permanent injunction." ECF 126, at 33 (citing *Monsanto Co.*, 561 U.S. at 156-57) (emphasis added). The Plaintiffs never presented any arguments

on the application of these factors when seeking their injunction, failing completely to carry their burden of proof.  Thus, the Court relied on its own analysis of the facts to determine the proper balancing of hardships in this matter, which omitted a review of the harm the Injunction will cause DCOR.

A reconsideration of these factors, which considers DCOR's hardships, shows it is proper for this Court to exempt DCOR's APMs from the Injunction's breadth.  "While '[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court,' the 'traditional principles of equity' *demand* a fair weighing of the factors listed above, *taking into account the unique circumstances of each case*." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir.2014) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)) (emphasis added).  "It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test…." *Monsanto,* 561 U.S. at 158 (emphasis in original).

When the Court considers the *Monsanto* factors, DCOR's harm must be expressly addressed. As an intervenor-of-right, subject only to conditions unrelated to its substantive status, DCOR shares the same rights and standing as the original parties to this action.  *See* ECF 71; § 1920 Status of Intervenor, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.) ("Unless conditions have been imposed, the intervenor is treated as if the intervenor were an original party and has equal standing with the original parties."); *see also League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) ("[A]s a general rule, intervenors are permitted to litigate fully once admitted to a suit.")  Thus, the court needed to consider DCOR's interests when weighing the factors and hardships necessary to the granting of a permanent injunction.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Moreover, the Court needed to ensure that its "[i]njunctive relief [was] tailored to remedy the specific harm alleged[, because a]*n overbroad injunction is an abuse of discretion*." *Lamb–Weston, Inc. v. McCain Foods*, Ltd., 941 F.2d 970, 974 (9th Cir.1991) (emphasis added) (citations omitted).   In this instance, the Injunction globally prohibits the Federal Defendants' from approving any permits until the indefinite time in which they can complete consultation with the FWS and the CZMA process, as pertains to *the entire* breadth of activities contemplated in the Final EA.  ECF 126, at 41.

When applied to DCOR, the scope of the Injunction causes it great harm, while not preventing any relevant corresponding injury.  Thus, the Injunction is too broad, and should be more narrowly tailored to accommodate DCOR's APMs. *See, e.g.*, *California v. Azar*, 911 F.3d 558, 2018 WL 6566752, at *16-17 (9th Cir. 2018) (holding the district court abused its discretion by issuing an overbroad preliminary injunction when it only considered the economic harm to the plaintiff States but issued a nationwide injunction including all States); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (preliminary injunction was overbroad).

### 1.   *DCOR will Suffer Irreparable Harm if the Court does not Exempt DCOR from the Injunction*

On matters of injunctive relief, district courts must consider all relevant factors of harm, including the impact the injunctive relief would have on the opposing party. *See Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 156-57 (2010); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21-22 (2008).  As explained in detail in § II above, the Injunction will cause DCOR to suffer irreparable harm, and no remedies are available at law to compensate for that injury.  ECF 126, at 33.  Specifically, it prohibits the Federal Defendants from "approving any plans or permits (DPPs, APDs, or APMs) for the use of WSTs on

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

13

the Pacific OCS unless and until they (1) complete consultation with FWS under the ESA and (2) complete the CZMA process under 16 U.S.C. § 1456(c)(1) for the proposed action described in the Final EA." *Id.*

If BSEE cannot review and approve the pending APMs, such that DCOR is unable to hydraulically fracture Platform Gilda, S-62 and S-28, then these wells will lack any value or utility.  This will result in DCOR immediately foregoing projected average annual net revenues of $7,400,000 over each of the first five (5) years, totaling a loss in present value of $29,750,000, which will cause a corresponding projected revenue loss to the United States from lost royalties over the same 5-year period totaling approximately $6,200,000, and a loss in present value of $5,000,000.

The failure of DCOR to fully realize the value of Platform Gilda through its proposed WST activities would result in a cumulative loss of projected revenue to DCOR of approximately $174,000,000, and a corresponding projected revenue loss to the United States from lost royalties of approximately $29,000,000.  *Id.* at ¶ 12.  DCOR has no legal avenue from which it can attempt to recover these lost funds.  Moreover, DCOR does not anticipate that any other operator would want to acquire interests in these assets without the ability to utilize WSTs, as a number of the wells within these assets would otherwise lack any measurable value or utility.

There is no legal avenue available to recover the revenue lost during the federal government's attempts to comply with the broad Injunction; thus, DCOR's harm will be unrecoverable and irreparable.  An "irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir.2000) (emphasis added). The Central District of California has recognized that when the government is a party, the monetary harm a party incurs between entry of an injunction and its final

BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

resolution on the merits, is irreparable.  *See F.T.C. v. Lab. Corp. of Am.*, No. SACV 10-1873 AG MLGX, 2011 WL 3100372, at *22 (C.D. Cal. Feb. 22, 2011) ("Courts must also carefully consider whether preliminary injunctive relief is appropriate in light of the long time-period between preliminary proceedings and a final decision on the merits…  This is particularly true when the government is the plaintiff as the merging parties will not be compensated for their harm during the pendency of the injunction, which renders such harm irreparable.")

### 2.  The Balancing of Equities Shows that DCOR's Hardships far Outweigh any Benefit to the Plaintiffs from Barring Consideration and Approval of DCOR's Permits

Imposition of the Injunction will expose DCOR to extensive and irrevocable harm, while providing minimal benefit to the Plaintiffs.  "It is important [for the court] to consider the totality of circumstances bearing on whether a permanent injunction is appropriate equitable relief."  *La Quinta Worldwide LLC*, 762 F.3d at 880 (vacating the entry of a permanent injunction, because the district court failed to consider all relevant facts, including the impact the injunctive relief would have on the opposing party, when balancing the hardships at issue).  Further, the Supreme Court has explicitly denounced cursory evaluations of the balancing of the equities and the public interest.  *Winter*, 555 U.S. at 26.  The scope of an injunction is "dependent as much on the equities of a given case as the substance of the legal issues it presents," and courts must tailor the scope "to meet the exigencies of the particular case."  *Trump v. Int'l Refugee Assistance Project*, — U.S.—, 137 S. Ct. 2080, 2087-88 (2017) (narrowing scope of injunction because the court did not properly analyze the potential harm to foreign nationals).

As explained above, implementation of the broad Injunction exposes DCOR to extensive hardship.  This harm to DCOR is not offset by benefits to the Plaintiffs, because activities under DCOR's APMs will not pose the risk of negative impacts to the State of California or the remaining Plaintiffs.  The Court

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

observed that "[w]hatever California may have concurred in with regard to past plans and permits for oil production on the POCS, it seems clear that it has not concurred in the use of WSTs." ECF 126 at 39.  That may be true in a very narrow sense, but it is mostly inconsistent with the record.  When the California Coastal Commission concurred with the consistency of the DPP for Platform Gilda in 1980, it had been a matter of public record since 1974—through a published EIS— that hydraulic fracturing and other WSTs were well completion methods that were authorized for use on the Pacific OCS.  *See* Letter from Ellen G. Aronson, BOEM Pacific Region Director,  and Jaron E. Ming, BSEE Region Director, to Dr. Charles Lester, Executive Director, California Coastal Commission (Feb. 11, 2014), *available at* https://www.bsee.gov/sites/bsee.gov/files/memos/bsee/2014-02-11-boem-bsee-ca-coastal-commision-letter.pdf.

Thus, the facts contradict a broader inference that the California Defendants have objected to, or *would have* objected to, hydraulic fracturing operations on the OCS.  They also show that California's interests in protecting its coastal zone will not be harmed by allowing DCOR's permits to proceed.  It is also of record (as noted in DCOR's brief on the merits) that the California Defendants have long approved an average of eighteen hydraulic fracturing operations per year on state submerged lands *inside the coastal zone*.  A.R. 24393.  Among those approvals were fourteen for hydraulic fracturing by DCOR.  Decl. of David Cohen, ¶¶ 12-13.  Each of these prior hydraulic fracturing treatments were conducted safely and successfully.  The APMs, which aim to conduct hydraulic fracturing 5.9 miles from the California coastal zone, are consistent with these treatments that DCOR and its predecessors conducted in California state waters (and the coastal zone) with State of California approval.

Similarly, exempting DCOR from the Injunction will not cause the Plaintiffs any harm in relation to the Plaintiffs' interest in having the government comply

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

16

with its ESA requirements.  DCOR's requested relief accounts for the Federal Defendants needing to complete any consultation with FWS, as pertains solely to its pending APMs, to the extent required under the ESA.  It is unclear why the FWS has not completed consultation with the Federal Defendants during the last seventeen months.  What is clear, however, is that the Federal Defendants opened consultation on topics far beyond WSTs.  See AR 106295 (listing activities on which consultation was sought).  If the Judgment is modified, the Federal Defendants could complete consultation limited to the two APMs, or they could complete consultation on all issues.  Either way, Plaintiffs are not irreparably harmed now, because they may challenge any final agency action on the APMs.  *Monsanto*, 561 U.S. at 162.

### 3.   *It Would be a Disservice to the Public Interest to Subject DCOR to the Injunction*

In seeking a permanent injunction, the Plaintiffs also needed to show that the "public interest would not be disserved by a permanent injunction."  *Monsanto*, 561 U.S. at 157 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  While the CZMA serves important public interests, so does development of oil and gas on the Outer Continental Shelf.  *Watt v. Energy Action Educ. Fdn.*, 454 U.S. 151, 155 n.3 (1981) ("The 'basic purpose' of the 1978 Amendments [to the OCS Lands Act] was to 'promote the swift, orderly and efficient exploitation of our almost untapped domestic oil and gas resources in the Outer Continental Shelf[.] (citation omitted)).

As in *Village of Gambell*, the CZMA (like ANILCA) does not state that uses of the coastal zone, let alone consistency determinations, "are always more important than development of energy resources[.]"  480 U.S. at 545.  It is the duty of the Court to seek accommodation among the competing elements of the public interest.  *Id.*  Elevating the right to a consistency determination, ECF 126 at 40,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

17

NOTICE OF MOTION AND MOTION FOR PARTIAL AMENDMENT OF JUDGMENT
OR PARTIAL RELIEF FROM ORDER ON BEHALF OF DEFENDANT INTERVENOR DCOR, LLC;
MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:16-CV-08418-PSG-FFMX

1   above all other considerations does not, DCOR respectfully submits, achieve the

2   required accommodation.

3   **IV.   <u>CONCLUSION</u>**

4         For the reasons set forth above, DCOR respectfully requests the Court grant

5   this Motion.

6

7   Dated:  January 10, 2019              Respectfully submitted,

8

9                                        Baker & Hostetler LLP
                                         By:    */s/ L. Poe Leggette*
10                                              Poe Leggette (Admitted *Pro Hac Vice*)
                                         *Attorneys for Defendant-Intervenor*
11                                       *DCOR, LLC*

12  Michael R. Matthias
    Mark S. Barron (Admitted *Pro Hac Vice*)
13  Emily B. Thomas (Admitted *Pro Hac Vice*)
    BAKER & HOSTETLER LLP
14  811 Main Street
    Suite 1100
15  Houston, TX  77002-6111
    Telephone:  713.751.1600
16  Facsimile:   713.751.1717

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION FOR PARTIAL AMENDMENT OF JUDGMENT
OR PARTIAL RELIEF FROM ORDER ON BEHALF OF DEFENDANT INTERVENOR DCOR, LLC;
MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:16-CV-08418-PSG-FFMX