XAVIER BECERRA
Attorney General of California
JAMEE JORDAN PATTERSON
DAVID A. ZONANA, SBN 196029
DAVID ALDERSON, SBN 231597
Supervising Deputy Attorneys General
GEORGE TORGUN, SBN 222085
Deputy Attorney General
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-1002
 Fax:  (510) 622-2270
 E-mail:  George.Torgun@doj.ca.gov

*Attorneys for Plaintiffs People of the State of California, ex rel. Xavier Becerra, Attorney General, and California Coastal Commission*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA, ex rel. XAVIER BECERRA, ATTORNEY GENERAL, and CALIFORNIA COASTAL COMMISSION,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,**<br><br>Defendants.<br><br>**AMERICAN PETROLEUM INSTITUTE, et al.,**<br><br>Intervenor-Defendants. | 2:16-cv-08418-PSG-FFM<br><br>**STATE PLAINTIFFS' OPPOSITION TO DCOR'S MOTION FOR PARTIAL AMENDMENT OF JUDGMENT OR PARTIAL RELIEF FROM ORDER**<br><br>Date:  April 29, 2019<br>Time:  1:30 p.m.<br>Courtroom:  6A<br>Judge:  Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

Introduction ..........................................................................................................1

Legal Standard .....................................................................................................1

Argument .............................................................................................................2

    I.    The District Court Did Not Err in Its Issuance of Injunctive Relief. .................................................................................................2

    II.    DCOR's Alleged Financial Harm Does Not Provide Any Basis for the Court to Reconsider its Judgment. ..............................................5

    III.    Even If This Court Could Consider DCOR's Alleged Financial Injuries, The Injunction Should Issue. ....................................................7

Conclusion .........................................................................................................13

# TABLE OF AUTHORITIES

Page

**Cases**

*389 Orange St. Partners v. Arnold*,
 179 F.3d 656 (9th Cir. 1999) .................................................................................. 2

*Ackermann v. United States*,
 340 U.S. 193 (1950) ................................................................................................ 2

*Adtrader, Inc. v. Google LLC*,
 2018 WL 1876950 (N.D. Cal. Apr. 19, 2018) ........................................................ 6

*Alliance for Wild Rockies v. Cottrell*,
 622 F.3d 1045 (9th Cir. 2010) .............................................................................. 12

*Amoco Production Co. v. Village of Gambell*,
 480 U.S. 531 (1987) ...................................................................................... 4, 8, 10

*Aurora World, Inc. v. Ty Inc.*,
 719 F. Supp. 2d 1115 (C.D. Cal. 2009) .................................................................. 7

*California Pharmacists Association v. Maxwell-Jolly*,
 563 F.3d 847 (9th Cir. 2009) .................................................................................. 7

*California v. Azar*,
 911 F.3d 558 (9th Cir. 2018) .................................................................................. 5

*Cottonwood Envtl. Law Ctr., v. U.S. Forest Serv.*,
 789 F.3d 1075 (9th Cir. 2015) ........................................................................... 9, 11

*Doster, Inc. v. Internet Corp.*,
 296 F. Supp. 2d 1159 (C.D. Cal. 2003) .................................................................. 6

*Earth Island Inst. v. U.S. Forest Serv.*,
 442 F.3d 1147 (9th Cir. 2006), *cert. denied,* 549 U.S. 1278 (2007) ............. 10, 12

*eBay Inc. v. MercExhange, LLC*,
 547 U.S. 388 (2006) ................................................................................................ 3

*In re Excel Innovations, Inc.*,
 502 F.3d 1086 (9th Cir. 2007) ................................................................................ 6

ii

STATE PLAINTIFFS' OPP. TO MOTION TO AMEND JUDGMENT – Case No. 2:16-cv-08418-PSG-FFM

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*F.T.C. v. Lab. Corp. of Am.*,
 2011 WL 3100372 (C.D. Cal. Mar. 11, 2011) ...................................................... 7

*Gonzalez v. Crosby*,
 545 U.S. 524 (2005) .............................................................................................. 2

*Idaho Rivers United v. U.S. Army Corps of Eng'rs*,
 156 F. Supp. 3d 1252 (W.D. Wash. 2015) ......................................................... 12

*Kona Enters., Inc. v. Estate of Bishop*,
 229 F.3d 877 (9th Cir. 2000) ................................................................................ 1

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
 762 F.3d 867 (9th Cir. 2014) ................................................................................ 3

*League of Wilderness Defenders/Blue Mountains Biodiversity Project
 v. Connaughton*,
 752 F.3d 755 (9th Cir. 2014) .............................................................................. 11

*Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
 575 F.3d 999 (9th Cir. 2009) .........................................................................8, 10

*Marbled Murrelet v. Babbitt*,
 83 F.3d 1068 (9th Cir. 1996) .............................................................................. 11

*McDowell v. Calderon*,
 197 F.3d 1253 (9th Cir. 1999) (*en banc*) ............................................................. 2

*Montana Wilderness Ass'n v. Fry*,
 408 F. Supp. 2d 1032 (D. Mont. 2006) .........................................................11, 12

*N. Alaska Envtl. Ctr. v. Hodel*,
 803 F.2d 466 (9th Cir. 1986) .............................................................................. 10

*National Parks & Conservation Ass'n v. Babbitt*,
 241 F.3d 722 (9th Cir. 2001), *cert. denied*, 534 U.S. 1104 (2002) ..................... 10

*Navajo Nation v. Dep't of the Interior*,
 876 F.3d 1144 (9th Cir. 2017) .............................................................................. 2

# TABLE OF AUTHORITIES
## (continued)

**Page**

*NRDC v. Houston*,
  146 F.3d 1118 (9th Cir. 1998) ........................................................................... 9

*Sampson v. Murray*,
  415 U.S. 61 (1974) ............................................................................................ 7

*Save Our Sonoran, Inc. v Flowers*,
  408 F.3d 1113 (9th Cir. 2005) ......................................................................... 10

*Save Strawberry Canyon v. Dep't of Energy*,
  613 F. Supp. 2d 1177 (N.D. Cal. 2009) ............................................................ 9

*Southeast Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
  472 F.3d 1097 (9th Cir. 2004) ......................................................................... 13

*State of California v. Norton*,
  311 F.3d 1162 (9th Cir. 2002) ........................................................................... 9

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (2009) ........................................................................................ 5

*TVA v. Hill*,
  437 U.S. 153 (1978) ........................................................................................ 11

*United States v. Alpine Land & Reservoir Co.*,
  984 F.2d 1047 (9th Cir. 1993) ........................................................................... 2

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) .......................................................................................... 4

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) .......................................................................................... 3, 4

**Federal Statutes**

16 U.S.C. § 1451 ...................................................................................................... 9

16 U.S.C. § 1452 ...................................................................................................... 9

16 U.S.C. § 1456(c)(1) ..................................................................................... *passim*

# TABLE OF AUTHORITIES
## (continued)

**Page**

16 U.S.C. § 1536(a)(2) .................................................................................. 10

16 U.S.C. § 1536(d) ....................................................................................... 9

**Federal Regulations**

15 C.F.R. § 930.30 ......................................................................................... 8

15 C.F.R. § 930.32(a)(1) ................................................................................ 8

15 C.F.R. § 930.41 ......................................................................................... 6

15 C.F.R. § 930.43(d) ..................................................................................... 9

**Federal Rules**

Federal Rule of Civil Procedure 59(e) ................................................. 1, 2, 13

Federal Rule of Civil Procedure 60(b) ................................................ 1, 2, 13

**Other Authorities**

11A Wright, Kane, Miller & Marcus, Federal Practice and Procedure §
   2948.1 (2d ed. 2011) ................................................................................ 6

## INTRODUCTION

On January 10, 2019, Intervenor-Defendant DCOR, LLC ("DCOR") filed a motion pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) asking the Court to amend its December 13, 2018 Judgment. ECF No. 133 ("Motion"). DCOR's Motion seeks to enable the Federal Defendants to process and approve two applications for permits to modify ("permits") that would allow DCOR to conduct hydraulic fracturing operations on the Pacific Outer Continental Shelf ("Pacific OCS"). DCOR claims that the Court erred in issuing a permanent injunction by failing to balance the equities with regard to DCOR and that, without such relief, DCOR will "suffer unrecoverable financial loss." However, there is no merit to these assertions.

This Court applied the appropriate standards in issuing a permanent injunction to prohibit the Federal Defendants from approving any plans or permits for the use of well stimulation treatments ("WSTs") on the Pacific OCS unless and until they (1) complete consultation with the United States Fish and Wildlife Service ("FWS") under the Endangered Species Act ("ESA"), and (2) complete the Coastal Zone Management Act ("CZMA") process under 16 U.S.C. § 1456(c)(1) for the proposed action described in the Final Programmatic Environmental Assessment of the Use of WSTs on the Pacific OCS dated May 2016. Moreover, DCOR's alleged financial harm is self-inflicted and speculative, and does not provide any basis for the Court to reconsider its judgment. Even if the Court were to consider such financial injury, the injunction factors still warrant the issuance of such relief. Consequently, State Plaintiffs respectfully request that the Court deny DCOR's Motion.

## LEGAL STANDARD

A Rule 59(e) motion to "alter or amend a judgment" is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.

2000). While district courts possess broad discretion to evaluate Rule 59(e) motions, the court should only grant such a motion if it " 'is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.' " *McDowell v. Calderon*, 197 F.3d 1253, 1255-56 (9th Cir. 1999) (*en banc*) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

Rule 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Rule 60(b)(1)-(5) authorizes the court to grant relief from a final judgment under specific circumstances or, under Rule 60(b)(6), for "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Under this Rule, "relief should be granted 'sparingly' to avoid 'manifest injustice' and 'only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.' " *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)); *see also Gonzalez v. Crosby*, 545 U.S. at 535 ("a movant seeking relief under Rule 60(b)(6)" is required "to show 'extraordinary circumstances' justifying the reopening of a final judgment") (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)).

DCOR's Motion appears to be based, for purposes of Rule 59(e), on the ground that the Court "committed clear error" in granting injunctive relief, and, under Rule 60(b), that the "initial decision was manifestly unjust." *See* Motion at 1-2, 8-9.

## ARGUMENT

### I. THE DISTRICT COURT DID NOT ERR IN ITS ISSUANCE OF INJUNCTIVE RELIEF.

There is no merit to DCOR's assertion that the Court erred in its issuance of a permanent injunction by awarding such relief "simply" upon the Federal

2

1  Defendants' violation of the CZMA. *See* Motion at 9-11. As an initial matter,
2  "[t]he decision to grant or deny permanent injunctive relief is an act of equitable
3  discretion by the district court." *eBay Inc. v. MercExhange, LLC*, 547 U.S. 388,
4  391 (2006). When deciding whether to issue a permanent injunction, the court
5  must consider whether: (1) the plaintiff suffered an irreparable injury; (2) remedies
6  available at law, such as monetary damages, are inadequate to compensate for that
7  injury; (3) a remedy in equity is warranted considering the balance of hardships
8  between the plaintiff and defendant; and (4) the public interest favors a permanent
9  injunction. *Id*. In making this decision, the court should take into account "the
10 unique circumstances of each case" and consider "the totality of the circumstances
11 bearing on whether a permanent injunction is appropriate equitable relief." *La*
12 *Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir.
13 2014).

      Here, the Court applied the appropriate standards in prohibiting the Federal Defendants from approving any plans or permits for the use of WSTs on the Pacific OCS unless and until they (1) complete consultation with FWS under the ESA, and (2) complete the CZMA process under 16 U.S.C. § 1456(c)(1) for the proposed action described in the Final EA. Order Granting in Part and Denying in Part the Cross-Motions for Summary Judgment, ECF No. 126 ("Order") at 41; Judgment, ECF No. 132 at 3. In particular, the Court considered the four-part test for permanent injunctive relief, discussed each factor, and properly concluded that the balance of harms and the public interest warranted such relief. Order at 32-35, 40. The Court specifically requested that the parties address such relief at the November 5, 2018 hearing on cross-motions for summary judgment, and each party was given an opportunity to provide its position on these issues. *See* ECF No. 124.

      The cases cited by DCOR do not warrant a different result. *See* Motion at 1-2, 9-11. In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the

Supreme Court held that enjoining the Navy's sonar training activities was not warranted because "the possible harm to the ecological, scientific, and recreational interests" of the plaintiffs was outweighed by the "national security" concerns raised by the Navy. *Id*. at 24-26. The Supreme Court found that that Ninth Circuit had not given proper consideration or sufficient weight to the Navy's concerns regarding the impact of an injunction on its training activities. *Id*. at 26-34. Here, there are no such national security issues. Moreover, DCOR cannot show that the Court erred in its injunction analysis by failing to consider information that was never presented to the Court in the briefing or hearing on cross-motions for summary judgment, or was introduced for the first time as part of this Motion. *See* Motion at 5-7.

Similarly, in *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982), the Supreme Court overturned an injunction granted by the Third Circuit prohibiting the Navy from conducting weapons training until it complied with the federal Clean Water Act because the lower court had failed to undertake a balancing of the equities in granting such relief. *Id*. at 310-20. And in *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987), the Supreme Court found that the Ninth Circuit had improperly *presumed* that injunctive relief should be granted for violations of environmental statutes without undertaking the proper analysis. *Id*. at 540-46. No such legal errors occurred here. The Court did not refuse to balance the equities or conclude that environmental interests always supersede all other interests. Rather, the Court considered and applied the four-factor test in determining whether an injunction was "appropriate" for the Federal Defendants' violations of the ESA and CZMA. Order at 33-34, 40.

Moreover, the injunction granted by the Court was specifically tailored to the violations at issue and not overbroad. *See* Motion at 13. Specifically, the Court found that the Federal Defendants violated requirements of the CZMA and the ESA

that should have been addressed prior to allowing the use of WSTs on the Pacific OCS.  Consequently, the Court enjoined the Federal Defendants from approving any plans or permits for such WSTs unless and until they complete ESA consultation with FWS and the CZMA process under 16 U.S.C. § 1456(c)(1). Order at 35, 41.  This is nothing like the situation in *California v. Azar*, 911 F.3d 558, 582-85 (9th Cir. 2018), which involved the issuance of a nationwide injunction, or *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140-41 (2009), where the Ninth Circuit found that an injunction should have been limited to the named parties and their employers.

In sum, this Court did not err in exercising its equitable discretion to issue an injunction based on the Federal Defendants' violations of the ESA and CZMA. DCOR has failed to identify any clear error of law or manifest injustice that would warrant altering or amending the Judgment.  Thus, DCOR's Motion should be denied.

## II. DCOR'S ALLEGED FINANCIAL HARM DOES NOT PROVIDE ANY BASIS FOR THE COURT TO RECONSIDER ITS JUDGMENT.

While DCOR does acknowledge that the Court conducted an "injunction analysis," Motion at 8, its primary contention is that the Court must reconsider the injunction factors to take into account the alleged impact on DCOR. *Id*. at 11-15. In particular, DCOR claims that the Federal Defendants' inability to process two permits to use hydraulic fracturing on Platform Gilda, one submitted in December 2016 and the second on January 10, 2019 (the same day that it filed this Motion), will result in millions of dollars in financial harm. *Id*. at 5-7, 13-15.  However, this assertion fails for several reasons.

First, DCOR's alleged financial harm is not a result of this Court's Judgment. With regard to the permit submitted by DCOR in December 2016, the Federal Defendants explained by letter dated January 19, 2017 that "the proposed activities have not been previously described in the existing DCOR Santa Clara Field

5

[development and production plans ("DPPs")]. Therefore, DCOR must supplement the Santa Clara Field approved DPP for Platform Gilda to include the activities proposed in the [permit]." AR 52269.[1] To State Plaintiffs' knowledge, DCOR has not taken any action during the past two years to comply with this request. Consequently, any alleged harm resulting from the Federal Defendants' failure to approve this permit is of DCOR's own making and is not irreparable. *See* 11A Wright, Kane, Miller & Marcus, Federal Practice and Procedure § 2948.1 (2d ed. 2011) ("Not surprisingly, a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted."); *Doster, Inc. v. Internet Corp.*, 296 F. Supp. 2d 1159, 1163 (C.D. Cal. 2003) (same); *Adtrader, Inc. v. Google LLC*, 2018 WL 1876950, *4 (N.D. Cal. Apr. 19, 2018) (finding that "[h]arm does not constitute irreparable injury if it is self-inflicted" and citing cases). The second permit submitted by DCOR on January 10, 2019, which requests authorization to conduct the same WST on the same platform, should receive the same response as the first permit.

Second, the financial harm alleged by DCOR is highly speculative and thus not sufficient to constitute irreparable harm. *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm"). In particular, this harm improperly assumes that DCOR will be forced to cease operations on these oil wells for several years, and ultimately to prematurely abandon operations on Platform Gilda. Motion at 5-7, 14. Yet the injunction issued by the Court only prohibits the Federal Defendants from approving such permits *until* they complete certain legal obligations under the ESA and CZMA, which could occur in a matter of months once the appropriate information is submitted to the relevant agency. *See, e.g.*, 15 C.F.R. § 930.41 (for

---

[1] For this reason, DCOR is incorrect that WSTs have been "authorized for use on the Pacific OCS" since 1980 when the Coastal Commission "concurred with the consistency of the DPP for Platform Gilda." *See* Motion at 16.

6

CZMA consistency process, requiring state agency response "within 60 days from receipt of the Federal agency's consistency determination and supporting information"). Thus, the Court's injunction is unlikely to result in the abandonment of operations on Platform Gilda or cause the harm alleged by DCOR.

Similarly, the short delay that DCOR may experience from being unable to utilize WSTs on Platform Gilda does not constitute irreparable harm since any temporary loss of income could ultimately be recovered when the permits are approved. *See California Pharmacists Association v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009) ("Typically, monetary harm does not constitute irreparable harm."); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1169 (C.D. Cal. 2009) ("Loss of sales alone will not support a finding of irreparable injury 'because acceptance of that position would require a finding of irreparable harm to every' plaintiff regardless of circumstances."). DCOR's reliance on *F.T.C. v. Lab. Corp. of Am.*, 2011 WL 3100372 (C.D. Cal. Mar. 11, 2011) is unhelpful as that case involved a different standard for injunctive relief under Section 13(b) of the FTC Act, and discussed unrecoverable harm that occurred between the entry of a preliminary injunction and a final decision on the merits, which is not the situation here. *See id.* at *15, 22.

Consequently, DCOR's alleged financial harm does not warrant reconsideration of the Court's Judgment.

### III. EVEN IF THIS COURT COULD CONSIDER DCOR'S ALLEGED FINANCIAL INJURIES, THE INJUNCTION SHOULD ISSUE.

Even if this Court were to consider the financial harm alleged by DCOR, the injunction factors favor the issuance of such relief. As an initial matter, it should be undisputed that the Federal Defendants' violations have resulted in irreparable injury to plaintiffs, and that such injuries cannot be remedied by money damages.

As the U.S. Supreme Court has stated, "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987); *see Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1020 (9th Cir. 2009) (same).

In their summary judgment briefing, Plaintiffs detailed the numerous severe and irreparable environmental harms from the Federal Defendants' Proposed Action of allowing WST use on the Pacific OCS. *See, e.g.,* ECF No. 95 at 15-19, 24-25; ECF No. 96 at 9-13, 22-25; ECF No. 97 at 8-13, 16-25. For example, as State Plaintiffs explained, it is reasonably foreseeable that the use of WSTs on the Pacific OCS will negatively affect coastal uses and marine resources, as well as the biological productivity and quality of coastal waters. *See* ECF No. 95 at 24-25. Such harm could occur from the discharge of WST chemicals, spills of hazardous substances, and by extending the life of aging infrastructure and increasing the marine transport of chemicals and equipment to that infrastructure. *Id*. WSTs on the Pacific OCS "involve the use of dozens of extremely toxic chemicals, including many known carcinogens, mutagens, reproductive toxins, developmental toxins, endocrine disruptors, or acute toxicity chemicals," and waste fluids that return to the surface following the completion of a WST are often discharged to the ocean. *Id*. at 15-17.

DCOR's latest assertion that "California's interests in protecting its coastal zone will not be harmed" by allowing WST permits to proceed without CZMA compliance is unsupported and misses the point. *See* Motion at 1-2, 7, 16. The CZMA requires federal agency activities (here, the Federal Defendants' proposed action) to be carried out to the maximum extent practicable with the enforceable policies of the State's approved management programs (here, the California Coastal Act). 16 U.S.C. § 1456(c)(1); *see* 15 C.F.R. §§ 930.30, 930.32(a)(1). If an activity

8

is not fully consistent with a state's enforceable policies, it cannot go forward, subject to exceptions not present here. *See* 15 C.F.R. § 930.43(d). Consequently, this Court's injunction is necessary to uphold the purposes of the CZMA to ensure that the proposed action is fully consistent with the enforceable policies of the California Coastal Act and to protect coastal uses and resources for the public. *See* 16 U.S.C. §§ 1451, 1452; *State of California v. Norton*, 311 F.3d 1162, 1169-70, 1178 (9th Cir. 2002) (setting aside approval of offshore lease suspensions where the federal government failed to undertake consistency review of the suspensions).

    Here, the Court properly determined that the Federal Defendants' legal violations would likely result in irreparable harm if WST permits were approved before the environmentally protective requirements of the ESA or the CZMA were followed. Order at 33-34, 40. As the Court found, allowing the Federal Defendants to approve WST permits before consultation is complete would constitute an "irreversible or irretrievable commitment of resources," in violation of the ESA. Order at 33-34 (citing 16 U.S.C. § 1536(d) and *NRDC v. Houston*, 146 F.3d 1118, 1128 (9th Cir. 1998)). The Court also determined that State Plaintiffs "have suffered an irreparable injury in being denied their right under the CZMA to receive and be given an opportunity to review a consistency determination under 16 U.S.C. § 1456(c)(1)." *Id*. at 40; *see Cottonwood Envtl. Law Ctr.,* 789 F.3d 1075, 1091 (9th Cir. 2015) (reaffirming that the harm flowing from a procedural violation can be irreparable); *Save Strawberry Canyon v. Dep't of Energy*, 613 F. Supp. 2d 1177, 1187 (N.D. Cal. 2009) (due to alleged NEPA violations involving failure to conduct environmental review, plaintiff was "virtually certain to suffer irreparable procedural injury absent an injunction"). While DCOR's Motion only requests that the Court modify its injunction to allow the processing of two permits, its argument contains no limiting principle and could equally apply to any other future WST permits submitted by operators.

1    Moreover, the fact that DCOR has conducted prior hydraulic fracturing
2    treatments in *state* waters (Motion at 7, 16) is irrelevant and ignores the fact that
3    this Court has since ruled that the Federal Defendants have failed to comply with
4    the ESA or CZMA prior to allowing such activities in *federal* waters.  DCOR has
5    no right to simply charge ahead with business as usual or claim that its activities
6    would be harmless.  Compliance with the ESA and CZMA prior to the issuance of
7    any WST permits is necessary to achieve the environmentally protective
8    requirements of these statutes.  *See, e.g.*, 16 U.S.C. § 1536(a)(2) (Section 7
9    consultation required to ensure that federal agency action "is not likely to
10   jeopardize the continued existence of any endangered species or threatened species
11   or result in the destruction or adverse modification" of critical habitat); 16 U.S.C. §
12   1456(c)(1)(C) (consistency determination must be submitted to State at least "90
13   days before final approval of the Federal activity").

14   This Court also did not err in finding that the balance of equities favors the
15   issuance of an injunction.  As the Supreme Court and the Ninth Circuit have long
16   determined, when environmental injury is sufficiently likely, "the balance of harms
17   will usually favor the issuance of an injunction to protect the environment." *Amoco*
18   *Prod. Co.*, 480 U.S. at 545; *see Cal. ex rel. Lockyer*, 575 F.3d at 1020; *Earth Island*
19   *Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1177 (9th Cir. 2006), *cert. denied,* 549
20   U.S. 1278 (2007) (economic losses suffered as a result of enjoined timber sales
21   does not outweigh potential irreparable environmental harm and the public's
22   interest in preserving the environment); *Save Our Sonoran, Inc. v Flowers*, 408
23   F.3d 1113, 1125 (9th Cir. 2005); *National Parks & Conservation Ass'n v. Babbitt*,
24   241 F.3d 722, 738 (9th Cir. 2001), *cert. denied*, 534 U.S. 1104 (2002) (economic
25   harm to defendant-intervenor "does not outweigh the potential irreparable damage
26   to the environment"); *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 471 (9th Cir.
27   1986) (more than pecuniary harm must be shown to outweigh environmental harm);
28

*Montana Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1034 (D. Mont. 2006) ("A third party's potential financial damages from an injunction generally do not outweigh potential harm to the environment."). Moreover, as the Ninth Circuit has repeatedly found, "Congress has determined that under the ESA the balance of hardships always tips sharply in favor of endangered or threatened species." *See Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996); *Cottonwood Envtl. Law Ctr., v. U.S. Forest Serv.,* 789 F.3d 1075, 1091 (9th Cir. 2015); *see also TVA v. Hill*, 437 U.S. 153, 187–88 (1978) (concluding that Congress determined in the ESA that the value of endangered species is "incalculable" and prohibiting the balancing of economic harms against the Congressionally determined public interest in preserving endangered species).

Here, the Court properly determined that the Federal Defendants would need to await the completion of ESA consultation before proceeding with WST permitting, and that the CZMA process could be completed before the ESA consultation, resulting in no additional harm. Order at 34, 40. Moreover, the Court relied on Defendants' own statements that operators would "only rarely be expected to request permits for WSTs" on the Pacific OCS. *Id*. at 40; *see* ECF No. 107 at 2-5 (DCOR defending as reasonable the Federal Defendants' estimate of WST frequency). Consequently, the financial injury now alleged by DCOR does not constitute irreparable harm or otherwise outweigh the environmental harms that will occur in the absence of an injunction. This is especially true where, as here, any financial harm to DCOR would be temporary. *See, e.g., League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (holding that "plaintiffs' irreparable environmental injuries outweigh the temporary delay intervenors face in receiving a part of the economic benefits of the project").

Finally, the public interest favors the issuance of an injunction to ensure compliance with the ESA and CZMA.  The Ninth has recognized "the well-established public interest in preserving nature and avoiding irreparable environmental injury."  *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1056 (9th Cir. 2010); *see Earth Island Institute*, 442 F.3d at 1177 (the preservation of the environment, as required by federal environmental laws, "is clearly in the public interest"); *Mont. Wilderness Ass'n*, 408 F. Supp. 2d at 1038 (the "most basic premise of Congress' environmental laws" is that "the public interest is best served when the law is followed"); *Idaho Rivers United v. U.S. Army Corps of Eng'rs*, 156 F. Supp. 3d 1252, 1268 (W.D. Wash. 2015) (finding that "[c]ourts have recognized that ensuring protection of the environment serves an important public interest" and citing cases).

As this Court found, "the public interest is served by an order ensuring the government complies with" the ESA and the CZMA, and because "any interest in proceeding forward with WSTs is outweighed by the interest of the people of the state of California in ensuring that their representatives are afforded their statutory right to review the proposed action for consistency with California's coastal management plan."  Order at 34, 40.  The Court did not err in concluding that the public interest favored environmental protection over oil and gas development, *see* Motion at 17-18, especially given the Federal Defendants' and DCOR's own statements that WST use would be infrequent and because the Federal Defendants could complete the CZMA process before any injunction would "substantially interfere with the course of action that the agencies would otherwise take."  Order at 40.  Moreover, DCOR has failed to show how a "delay in [ ] activities caused by the court's injunction will reduce significantly any future economic benefit that may result from" such operations, especially given that "the public interest strongly

favors preventing environmental harm." *See Southeast Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1101 (9th Cir. 2004).

Consequently, DCOR has failed to provide any basis to amend this Court's Judgment pursuant to Federal Rules of Civil Procedure 59(e) or 60(b).

## CONCLUSION

For the foregoing reasons, State Plaintiffs respectfully request that the Court deny DCOR's Motion.

Dated: March 25, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
DAVID A. ZONANA
DAVID ALDERSON
Supervising Deputy Attorneys General

/s/ George Torgun
GEORGE TORGUN
Deputy Attorney General

*Attorneys for Plaintiffs People of the State of California, ex rel. Xavier Becerra, Attorney General, and California Coastal Commission*

13

STATE PLAINTIFFS' OPP. TO MOTION TO AMEND JUDGMENT – Case No. 2:16-cv-08418-PSG-FFM