Margaret Morgan Hall (Bar No. 293699)
Email: mhall@environmentaldefensecenter.org
Linda Krop (Bar No. 118773)
Email: lkrop@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, California 93101
Telephone:  (805) 963-1622
Facsimile:  (805) 962-3152

*Attorneys for Plaintiffs Environmental Defense Center
and Santa Barbara Channelkeeper*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>BUREAU OF OCEAN ENERGY MANAGEMENT, et al.,<br><br>          Defendants,<br><br>and<br><br>AMERICAN PETROLEUM INSTITUTE, et al.,<br><br>          Intervenor-Defendants. | Case No: 2:16-cv-08418-PSG-FFMx<br><br>**PLAINTIFFS ENVIRONMENTAL DEFENSE CENTER'S AND SANTA BARBARA CHANNELKEEPER'S OPPOSITION TO DEFENDANT-INTERVENOR DCOR, LLC's MOTION FOR PARTIAL AMENDMENT OF JUDGMENT OR PARTIAL RELIEF FROM ORDER**<br><br>Hearing Date:  April 29, 2019<br>Hearing Time:  1:30pm<br>Courtroom:       6A<br>Hon.               Philip S. Gutierrez |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.      There are No Grounds for the Court to Reconsider its Injunction ......................... 3

II.     The Court Did Not Err with Respect to its Issuance of the Injunction ................. 6

III.    Reconsideration of the *Monsanto* Factors Would Not Change the Outcome of this Case ......................................................................................................... 9

    A.      Plaintiffs Would Suffer Irreparable Harm Absent an Injunction that Halts Approval of All WST Permits ......................................................... 10

    B.      Legal Remedies are Inadequate to Compensate for the Injury that Plaintiffs will Suffer ..................................................................... 14

    C.      The Balance of Equities Tips Sharply in Favor of the Twenty-Five Threatened and Endangered Species Affected by WSTs ......................... 14

    D.      Ensuring the Federal Government Complies with the Law Would Not be a Disservice to the Public Interest ................................................. 16

IV.     The Injunction is Narrowly Tailored to Redress Plaintiffs' Injuries .................... 18

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............... 10, 13, 17

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101 (9th Cir. 2011) ............................. 4

*Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531 (1987) ....................... *passim*

*Califano v. Yamasaki*, 442 U.S. 682 (1979) .................................................. 18

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018). .................................... 18–19

*Campion v. Old Republic Home Prot. Co.*, No. 09-CV-748-JMA NLS, 2011 WL
   1935967 (S.D. Cal. May 20, 2011) ............................................................ 5

*Crane-McNab v. Cty. of Merced*, 773 F. Supp. 2d 861 (E.D. Cal. 2011) ..................... 5

*Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147 (9th Cir. 2006) ........................ 16

*In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682 (Bankr. C.D. Cal. 2003) .......... 5

*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000) ............................ 3

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970 (9th Cir. 1991) ..................... 18

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752
   F.3d 755 (9th Cir. 2014) .................................................................... 11

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ..................... 6, 10, 16–17

*N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d
   1104 (9th Cir. 2010) ........................................................................ 17

*Nat. Res. Def. Council v. Hodel*, 865 F.2d 288 (D.C. Cir. 1988) ................................ 18

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007) ....................... 9

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803 (9th Cir. 2018) .... 10

*National Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722 (9th Cir. 2001) .......... 16

*Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990) ............................. 15

*Rubin ex rel. N.L.R.B. v. Vista Del Sol Health Servs., Inc.,* 80 F. Supp. 3d 1058 (C.D.
   Cal. 2015) ................................................................................ 15–16

*Sampson v. Murray*, 415 U.S. 61 (1974) ............................................................... 15

*Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950 (9th Cir. 2013) ........................... 4

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153 (1978) ...................................*passim*

*United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047 (9th Cir. 1993)............. 5

*Weinberger v. Romero-Barcelo,* 456 U.S. 305 (1982). ............................... 7, 9

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) ........................... 1, 8

**Statutes**

16 U.S.C. § 1536 (a)(2) .................................................................................... 8

16 U.S.C. § 1536 (b)(3)(A) ............................................................................ 15

**Rules**

Fed. Rule Civ. Pro. 59(e) ............................................................................... 3

Fed. Rule Civ. Pro. 60(b)(1)–(5) .................................................................. 5

Fed. Rule Civ. Pro. 60(b)(6) .......................................................................... 5

Local Rule 7-18(c) .......................................................................................... 4

**INTRODUCTION**

This Court issued a final Judgment in this case on December 13, 2018, in which it properly exercised its equitable discretion in fashioning relief to remedy Federal Defendants' violations of the Endangered Species Act ("ESA") and Coastal Zone Management Act ("CZMA"). Specifically, the Court ordered Federal Defendants "to refrain from approving any plans or permits for the use of well stimulation treatments on the Pacific Outer Continental Shelf unless and until they (1) complete consultation with [Fish and Wildlife Service ('FWS')] under the ESA, and (2) complete the CZMA process under 16 U.S.C. § 1456 (c)(1)." Judgment, ECF No. 132 at 3; *see also* Order Granting in Part and Denying in Part the Cross-Motions for Summary Judgment ("Order"), ECF No. 126. Intervenor-Defendant DCOR, LLC ("DCOR") now seeks a modification to the Court's Judgment under Federal Rule of Civil Procedure 59(e) or 60(b) to allow Federal Defendants to approve two applications for permits to drill ("applications") that would authorize DCOR to conduct hydraulic fracturing on the Pacific Outer Continental Shelf ("OCS"). DCOR Motion, ECF No. 133. The company claims that the injunction will cause it "unrecoverable financial loss" by stripping two of its wells of "any value or utility" and that this Court did not consider the equities and balance of harms with respect to its operations. DCOR Motion at 1, 14.

However, DCOR fails to make a showing that warrants reconsideration of the Court's Judgment. First, this case does not satisfy the strict standards of Rule 59(e) or 60(b), either of which must be met before a court may reopen a final judgment. Second, this Court acted well within its discretion to order relief that ensures compliance with the law. Rather than compelled by *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008), where an injunction was inappropriate because of the unique national security interests at issue, the relief in this case is controlled by

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153 (1978) ("*TVA v. Hill*"), in which an injunction was necessary to protect listed species.

Third, even if the Court were to reconsider the factors for issuing an injunction, nothing would change because the Judgment does not present DCOR with irreparable harm. DCOR overstates the effect of the injunction, which is temporary by nature and will expire once Federal Defendants comply with the law. Moreover, its alleged harms are not the result of this Court's order. Even without the injunction in place, DCOR must—like every other operator—wait for the required processes to conclude before it can proceed with what would otherwise be an unlawful activity. In fact, Federal Defendants have already declined to approve one of DCOR's applications at this time. Letter to DCOR, AR 52269 (January 19, 2017) (determining that before Federal Defendants will "commence the review process," the Santa Clara Field Development and Production Plan must be supplemented to include the proposed hydraulic fracturing activity). The other application was not even submitted until after this Court issued the injunction, rather it is dated January 10, 2019, the same day DCOR filed the present motion. DCOR Motion at 5. If DCOR is able to conduct hydraulic fracturing before the expert wildlife agency concludes consultation on the programmatic level that would undermine the process and threaten to jeopardize the continued existence of at least twenty-five listed species. *See* Plaintiffs' Environmental Defense Center's ("EDC's") and Santa Barbara Channelkeeper's ("SBCK's") Complaint, Case No. 2:16-cv-8418, ECF No. 1, ¶ 206 (identifying species threatened by the use of well stimulation treatments ("WSTs"), including, blue, fin, and humpback whales, sea otters, several bird, fish, and sea-turtle species, and black and white abalone). Finally, the injunction is narrowly tailored to redress Plaintiffs' injuries.

Therefore, a modification of this Court's Judgment is unwarranted and DCOR's motion must be denied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARGUMENT**

DCOR's circumstances do not present a situation that warrants this Court's modification to its Judgment. The Court's Order was based on the record and argument of the parties, not on "manifest errors of law or fact" or "mistake, inadvertence, surprise, or excusable neglect." *See* DCOR Motion 8–9 (citing standards under Federal Rules of Civil Procedure 59(e) and 60 (b)). The injunction will not cause "manifest injustice." *Id.* Instead, it prohibits Federal Defendants from approving permits until they comply with the law. The Court's injunction is well within its equitable discretion. Nonetheless, if the Court were to reconsider its Judgment, the injunction factors still weigh sharply in favor of Plaintiffs, and the relief is already narrowly tailored to address Plaintiffs' irreparable harm.

## I.    There are No Grounds for the Court to Reconsider its Injunction.

DCOR cites the legal standards for altering or amending a judgment and granting relief from judgement under Federal Rules of Civil Procedure 59(e) and 60(b) and Local Rule 7-18(c) but fails to demonstrate how the high bars established by these rules are met. Instead, it claims that the Court did not consider "the effect the Injunction would have on DCOR" and that facts in the record support that DCOR's harm is "substantial" and Plaintiffs' harm "slight." DCOR Motion at 9. Although DCOR may disagree with the Court's ruling, it fails to establish grounds that warrant the Court's use of the extraordinary remedy of opening its final Judgment to craft an exemption for DCOR's two applications.

DCOR's requested relief is inappropriate under Rule 59(e). *See* Fed. Rule Civ. Pro. 59(e). Amending or altering a final judgment pursuant to Rule 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citations omitted). Although courts enjoy

---

discretion in ruling on Rule 59(e) motions, such motions generally may only be granted on the following grounds: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).  Further, the Central District Local Rules provide that a motion for reconsideration "may be made only on the grounds of," *inter alia*, "a manifest showing of a failure to consider material facts presented to the Court before such decision."  Local Civil Rule 7-18(c).

Here, DCOR appears to hang its hat on the theory that its Motion is necessary to prevent "manifest injustice" or correct a "manifest error" committed by this Court for failing to address its harms simply because the Court did not articulate potential harms to DCOR as distinct from Federal Defendants.  However, as explained below, the Court properly considered the potential harm to Federal Defendants and its same reasoning applies to DCOR: "The Federal Defendants seem unlikely to suffer harm from an injunction since it appears that even without an injunction they would await the completion of consultation before proceeding with WST permitting." Order at 34.  Likewise, the injunction does not harm DCOR because it must wait for the legally-required processes to conclude, whether or not this Court's Judgment is in effect.  Therefore, the Court already considered the harm that would result from not allowing the approval of permits and its injunction does not result in any injustice to DCOR.

The Court also did not commit any manifest or "clear error"—which occurs where a court is left with a "definite and firm conviction that a mistake has been committed." *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)); *see also*

*Campion v. Old Republic Home Prot. Co.*, No. 09-CV-748-JMA NLS, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011) (noting that to meet the "clear error" standard, the decision must be "more than just maybe or probably wrong; it must be dead wrong"); *In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (quoting Black's Law Dictionary) (defining clear error as "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record"). Here, the Court did not make a manifest error; it properly addressed the injunction factors and the record supports the appropriateness of the Court's Judgment.

DCOR also fails to demonstrate why it should be afforded special treatment under the sparingly-used remedy of relief from judgment. Under Rule 60(b) there are a specific set of circumstances under which it is proper for the court to relieve a party from a judgment or order, which are as follows: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied." Fed. Rule Civ. Pro. 60(b)(1)–(5). If none of those applies, the rule has a catchall provision for "(6) any other reason justifying relief from the judgment." Fed. Rule Civ. Pro. 60(b)(6). Relief from judgment under this rule is not appropriate based on "[m]ere dissatisfaction with the court's order, or belief that the court is wrong in its decision." *Crane-McNab v. Cty. of Merced*, 773 F. Supp. 2d 861, 874 (E.D. Cal. 2011) (citing *Twentieth Century–Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981)). Moreover, the catchall provision is to be used "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). Such relief is only appropriate in "extraordinary circumstances" and ordinarily not granted unless the "moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests." *Id.*

Here, DCOR appears to assert that the Judgment involves "mistake" or, instead, gives rise to "any other reason justifying relief." *See* Motion at 1–2, 8–9. However, the Court properly applied the injunction factors and thus has committed no mistake.  In addition, there is no other reason justifying relief because the injunction does not injure DCOR, as explained below.  Therefore, there are no grounds in this case for the Court to modify its Judgment.

## II.   The Court Did Not Err with Respect to its Issuance of the Injunction.

DCOR mischaracterizes this case as one in which the Court improperly *presumed* irreparable harm where the agency failed to follow procedures required by law. DCOR Motion at 11.[1]  While courts are of course not "mechanically obligated to grant an injunction for every violation of law," they have the discretion to fashion equitable relief and issue injunctions where appropriate. *TVA v. Hill*, 437 U.S. at 193.  Specifically, courts must assess the four injunction factors addressed in Section III below. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157–58 (2010).  Here, the injunction was not an automatic response to a "mere failure to obtain a permit or prepare an analysis." DCOR Motion at 10.  The Court applied the appropriate factors and acted well within its equitable discretion to secure compliance with the ESA and CZMA, thereby preventing harm to endangered and threatened species and their habitat.

The Court did not rely on any presumptions and instead properly addressed the injunction factors. *See* Order at 32–35.  After carefully considering the potential harms of both issuing the injunction to ensure the status quo and denying such relief, the Court concluded that "it is appropriate to issue an injunction to

---

[1] DCOR also wrongly asserts that the Court based its injunction "simply on the Federal Defendants' failure to provide a consistency determination," *id.* at 9, although the Court made clear that it was also issuing an injunction specifically to remedy Defendants' ESA violation. *See* Order at 34.

prevent the irreparable harm that Plaintiffs will suffer if the agencies issue WST permits before ESA consultation with FWS has been completed." *Id.* at 34.  In addition, the primary focus of the hearing on the motions for summary judgment was relief.  Plaintiffs stressed the need for an injunction to prevent the Federal Defendants from issuing permits until they complied with the ESA. *See* ECF No. 124.  DCOR had the opportunity to rebut Plaintiffs' arguments.  DCOR's current applications only reinforce the threat that these practices will occur, and thus the need for the Court's Judgment to prevent them until Federal Defendants comply with the law.

None of DCOR's arguments undermine the Court's Order, which was well within its equitable discretion.  DCOR cites cases where, unlike here, the lower courts either departed from their traditional equitable powers or gave inadequate weight to competing harms.  In *Weinberger v. Romero-Barcelo*, the Court held that when Congress enacted the Clean Water Act, it did not strip district courts of their equitable discretion and *require* them to immediately issue injunctions in light of every violation, instead of balancing the equities. 456 U.S. 305, 315–20 (1982). Instead, the Court concluded that the statute "permits the district court to order that relief it considers necessary to secure prompt compliance with the Act" and that such relief may include "immediate cessation" of the challenged action. *Id.* at 320. In *Amoco Prod. Co. v. Village of Gambell, AK,* the Court held that district courts should not *presume* irreparable harm where the statute at issue does not support such presumption. 480 U.S. 531, 544–46 (1987).  Here, the Court did not depart from its traditional equitable powers in enjoining the violations in this case by presuming harm or stating that it was required to issue an injunction.  Instead, the Court properly addressed the appropriateness and need for an injunction in this case and all relevant factors in ordering relief to "secure prompt compliance" with the ESA and CZMA. *Weinberger,* 456 U.S. at 320.

In *Winter*, the Supreme Court was faced with whether it should uphold an injunction prohibiting the Navy from conducting training exercises with active sonar when those exercises ensured its ability to "neutralize the threat posed by enemy submarines." 555 U.S. at 26, 33.  While the Court recognized the "importance of plaintiffs' ecological, scientific, and recreational interests" related to the marine mammals that would be allegedly harmed, it concluded that the balance of equities and public interest favored the Navy because the injunction would "pose a serious threat to national security." *Id*. at 33.  Here, the Court adequately considered the harms on both sides and balanced the equities.  This case does not present anywhere near the type of circumstances that faced the Court in *Winter*—DCOR's private interest in pursuing offshore fracking before the legally-required processes conclude is a far cry from the Navy's interest in assuring national public safety.  Therefore, none of the cases DCOR cites undermine the Court's injunction.

In fact, these cases are instructive on a point that DCOR overlooks: they stress the importance of the underlying statute and substantive policy at issue.  *See, e.g.*, *Village of Gambell,* 480 U.S. at 544 (noting that the lower court improperly focused on "the statutory procedure rather than on the underlying substantive policy the process was designed to effect").  Here, the ESA strongly counsels in favor of injunctive relief, which is necessary to prevent harm to listed species, not simply to ensure a process.  *See* 16 U.S.C. § 1536 (a)(2); *see also* 16 U.S.C. § 1531(b) (establishing the ESA's fundamental purposes as conservation of listed species and the ecosystems on which they depend).  Plaintiffs' claims were brought pursuant to Section 7(a)(2), which is the "heart of the ESA" and requires Federal Defendants to ensure their actions do not jeopardize the very existence of listed species. *Karuk Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006, 1019 (9th Cir. 2012).  This analysis is critical because if the wildlife agency makes a

jeopardy determination at the end of the consultation process, the action cannot go forward as is. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 652 (2007).

Given the strong commands of Section 7, the Supreme Court has recognized that with respect to the ESA, Congress did in fact "foreclose[ ] the usual discretion possessed by a court of equity." *Weinberger,* 456 U.S. at 313 (citing *TVA v. Hill*, 437 U.S. at 173); *see also Cottonwood Environmental Law Center v. U.S. Forest Service*, 789 F.3d 1075,1090 (9th Cir 2015). ("[T]he ESA strips courts of at least some of their equitable discretion in determining whether injunctive relief is warranted."). In *TVA v. Hill*, the Supreme Court required the district court to enjoin a project in order to protect a listed species, concluding that Congress "afford[ed] first priority to the declared national policy of saving endangered species" and that courts do not have the discretion to balance interests competing with protecting listed species. 437 U.S. at 185. The Court reached this conclusion based on the purpose and language of the ESA, pointing to Section 7's "flat ban" on destruction of critical habitats and jeopardizing the continued existence of species. *Weinberger,* 456 U.S. at 314 (citing *TVA v. Hill*, 437 U.S. at 173). Here, the Court acted in line with its equitable discretion, which is cabined by its duty to ensure compliance with the ESA, and there is no reason for the Court to reconsider its application of the *Monsanto* factors.

## III.   Reconsideration of the *Monsanto* Factors Would Not Change the Outcome of this Case.

DCOR argues that this Court should revisit its application of the *Monsanto* factors specific to DCOR's alleged harms and create an exemption to the Court's injunction to "accommodate" DCOR's applications for offshore fracking. DCOR Motion at 13. However, reconsideration of the injunction factors would not result

---

in a different outcome because DCOR has not suffered any harm that is caused by the Court's injunction.  In deciding whether to issue injunctive relief, courts consider: (1) whether the plaintiff has suffered an irreparable injury; (2) whether legal remedies are adequate to compensate for that injury; (3) whether the balance of hardships between the parties warrants equitable relief; and (4) whether the public interest would not be disserved by a permanent injunction. *Monsanto*, 561 U.S. at 157.  These factors tip sharply in favor of protecting the twenty-five threatened and endangered species threatened by offshore fracking in this case.  There is no reason to give DCOR special permission to skirt around the important programmatic consultation process currently underway.

### A.   Plaintiffs Would Suffer Irreparable Harm Absent an Injunction that Halts Approval of All WST Permits.

Although courts must not *presume* irreparable harm, the purposes of the ESA in "conserving endangered and threatened species and the ecosystems that support them" make establishing irreparable harm not an "onerous task." *Cottonwood*, 789 F.3d at 1091 (citing 16 U.S.C. § 1531).  Courts have consistently recognized irreparable harm stemming from plaintiffs' concerns of harm to species and the environment. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 820–23 (9th Cir. 2018) (upholding an injunction where organizations' irreparable harm was based on impacts to listed species that would occur absent the injunction); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (upholding finding of irreparable harm where plaintiff organization asserted "that the Project will harm its members' ability to 'view, experience, and utilize' the areas in their undisturbed state").  These harms are inherently irreparable.  As the Supreme Court has recognized, "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Village of Gambell*, 480 U.S. at 545; *see*

*also League of Wilderness Defs./Blue Mountains Biodiversity Project v.
Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014) (concluding that harm caused by
logging of mature trees cannot be remedied easily, if at all, and thus is irreparable,
even where area had previously been logged).

This Court has already found that Plaintiffs will suffer irreparable harm
absent the injunction. Order at 34.  The Court reasoned that Defendants' ESA
violations cannot be cured after offshore fracking is allowed to occur, and that
even though Defendants appear to be voluntarily suspending permitting until the
ESA process is complete, they have made "no clear commitment to this effect." *Id.*
at 34.  Thus, the injunction is necessary in order to "prevent the irreparable harm
that Plaintiffs will suffer if the agencies issue WST permits before ESA
consultation with FWS has been completed." *Id*.  DCOR's two proposed permits
are no exception and should not be afforded special treatment.

As the record in this case makes clear, Plaintiffs will suffer irreparable harm
if DCOR's permits can proceed before Federal Defendants complete the legally-
required ESA and CZMA processes.  First, Plaintiffs demonstrated irreparable
harm caused by the approval of these practices in their Motion for Summary
Judgment and corresponding declarations.  Plaintiffs' brief pointed to specific
examples throughout the administrative record, including in the Programmatic
Environmental Assessment ("PEA"), Finding of No Significant Impact ("FONSI"),
and Biological Assessments ("BAs"), identifying harm to twenty-five threatened
and endangered species.  For example, Plaintiffs highlighted that well stimulation
treatments, generally, are expected to affect biological resources.  Plaintiffs EDC's
and SBCK's Motion for Summary Judgment, ECF No. 96 ("Motion for Summary
Judgment"), 22 (citing AR 16571).  Plaintiffs also highlighted specific harms with
respect to each category of affected species. *Id.* at 22–23.  For example,  Plaintiffs
identified the potential for marine and coastal fish to be "temporarily exposed to

highly diluted concentrations of WST-related chemicals" in platform discharges. *Id.* at 22 (citing AR 16481). Plaintiffs noted impacts to marine mammals including those "associated with the discharge from platforms of WST-related fluids and chemicals;" from "noise" and being "struck by PSVs;" from a surface spill of WST chemicals; and from "disturbance in behavior and/or distribution of some individuals." *Id.* at 22–23 (citing AR 16481, 164582, 164583). Plaintiffs highlighted that birds would be impacted by "noise or the presence of PSVs" and the "accidental release of WST chemicals." *Id.* at 23 (citing AR 16486–87). Finally, Plaintiffs pointed to potential harm to sea turtles from the "accidental release of WST fluids and crude oil," resulting in "decreased health, reproductive fitness, and longevity," *id.* (citing AR 16488); from being "struck by PSVs" and disturbed by noise associated with PSVs; and from being "expos[ed] [to WST chemicals] through direct contact and through ingestion of contaminated food." *Id.* (citing AR 16487).

In addition, Plaintiffs demonstrated how these potential harms to endangered and threatened species injure specific members of Plaintiffs' organizations, and supported those allegations with seven declarations detailing those injuries. Motion for Summary Judgment at 8, fn. 2; ECF No. 96-1 through 96-7 (declarations). Plaintiffs' brief highlighted examples of the recreational, aesthetic, academic, and other interests that their members have in the Santa Barbara Channel and how such interests would be irreparably harmed absent this Court's injunction. Motion for Summary Judgment at 8, fn. 2 (highlighting the following examples of harm: "Horn Decl. (declaring, for example, she regularly swims in the Channel and near platforms, and fears contact with WST chemicals will directly impact her health); Coffey Decl. (stating that, as a naturalist, she worries WSTs will harm or kill the wildlife that she loves to see in the Channel); Helms Decl.; Cohen Decl.; Calambokidis Decl.; Bailey Decl.; Redmond Decl."). These harms

can no longer be remedied once permit applications are approved and are thus irreparable.  Order at 34 ("After permits have been issued, Defendants' ESA violation can no longer be cured."); *see also Village of Gambell*, 480 U.S. at 545; *All. for the Wild Rockies*, 632 F.3d at 1135.

DCOR states that Plaintiffs will not be harmed by a modification to the Judgment because Federal Defendants "must still complete any consultation with the [FWS], as specifically pertains to these two APMs, to the extent required under the ESA."  DCOR Motion at 2.  However, separating out these two permits into an individual process despite the current programmatic consultation would contravene the expert wildlife agency's ongoing efforts and the ESA, and fail to capture the collective impacts that WSTs have on listed species throughout the Pacific OCS region.  Thus, breaking from this programmatic consultation, even if Federal Defendants conducted a separate consultation process on these permits, would cause Plaintiffs irreparable harm.  Alternatively, if DCOR is suggesting that it could proceed with its permits before such individual consultation concludes, that would likewise violate the ESA and cause irreparable harm to Plaintiffs, because consultation must occur *before* its permits can be approved. Order at 33 ("*Houston* and the ESA itself prohibit the Federal Defendants from approving WST permits before consultation with FWS is complete").

In addition, DCOR's attempt to downplay Plaintiffs' harms based on its claim that offshore fracking has been occurring for "nearly 40 years with no documented episode of harm," DCOR Motion at 2, is to no avail.  First, that statement conflicts with the record in this case, which as explained above, is replete with examples of the ways in which WSTs threaten to harm listed species.  Second, the wildlife agencies were not consulted with respect to such earlier fracking operations, so there is no way of knowing what the effects have been.  Moreover, offshore fracking includes not only the specific application of WSTs, but also allows

platforms to continue operating, and thus all impacts associated with offshore oil and gas development should be properly within the scope of the ESA consultation. There can be no question that offshore oil and gas development poses a tremendous threat to listed species, for example, as seen in the 2015 rupture of the Plains All American Pipeline. Motion for Summary Judgment at 22.

Accordingly, the Court correctly found that the injunction is necessary to protect Plaintiffs from irreparable injury.

### B.   Legal Remedies are Inadequate to Compensate for the Injury that Plaintiffs will Suffer.

As this Court correctly concluded, "[m]oney damages would be insufficient to remedy the harm caused by the ESA violation." Order at 34; *see also id.* at 40 (ruling with respect to the CZMA that "[m]oney damages are ill-suited for remedying this type of violation"). Because the injury in this case concerns adverse impacts to sensitive species and their habitat, there is no monetary award that could negate that harm. *Village of Gambell*, 480 U.S. at 545 ("Environmental injury, by its nature, can seldom be adequately remedied by money damages. . ."); *League of Wilderness Defenders*, 752 F.3d at 764 (noting that planting of new seedlings or paying of money damages could not normally remedy environmental harm from proposed logging project).

### C.   The Balance of Equities Tips Sharply in Favor of the Twenty-Five Threatened and Endangered Species Affected by WSTs.

As the Supreme Court has held, when it comes to balancing of the equities, "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities." *TVA. v. Hill*, 437 U.S. at 194; *see also id.* at 184 ("The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost."). Here, on one side of the scale is Plaintiffs'

irreparable harm due to the potential impacts of WSTs on twenty-five threatened and endangered species, identified above.  The other side of the scale consists of a temporary halt on permit approvals until the Federal Defendants comply with the law, which is the case with or without the Court's injunction.  Thus, the balance of equities in this case tips sharply in favor of Plaintiffs.

DCOR severely overstates its potential harms.  It claims that its harms include financial losses that render two of its wells without "any value or utility" and thus calculates its losses over a five-year period. DCOR Motion at 14.  DCOR further exaggerates the effect of the Court's ruling, leaping to a claim that not only will the company not be able to produce from the two wells with pending applications, but that it will forego future operations that are not even subject to any applications, and then will potentially shut down the entire platform. *Id.* at 6.  DCOR overlooks that at the end of the ESA and CZMA processes, some type of WST activity may be allowed.  As DCOR acknowledges, the Judgment only prohibits Defendants from approving WSTs *until and unless* they comply with the law. DCOR Motion at 14.  Moreover, the ESA and its implementing regulations set forth timing parameters for the consultation process, which is not indefinite. *See* 50 C.F.R. § 402.14(e) (providing that consultation concludes within 90 days unless extended pursuant to the process outlined in the regulations); 16 U.S.C. § 1536(b)(3)(A) (requiring biological opinions to be delivered "promptly after" consultation is concluded).  Therefore, any harm from losing the value of these wells, especially over a five-year period, is entirely speculative and only temporary, and thus does not constitute irreparable harm. *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 557 (9th Cir. 1990) (internal citations omitted) (stating that for injunctive relief "'the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical'"); *Sampson v. Murray*, 415 U.S. 61, 90–93 (1974) (ruling that "loss of income" did not constitute irreparable harm); *Rubin ex*

*rel. N.L.R.B. v. Vista Del Sol Health Servs., Inc.,* 80 F. Supp. 3d 1058, 1074 (C.D. Cal. 2015) ("Economic damages are not traditionally considered irreparable. . .").

In addition, Federal Defendants' current inability to approve DCOR's permits is not even *caused* by the injunction in this case. As this Court noted, the Federal Defendants appear to be waiting until completion of consultation before approving permits, even without the injunction. Order at 34. That outcome is required by the ESA itself, and in fact, Federal Defendants have already refused to authorize one of DCOR's permits. Letter to DCOR, AR 52269 (January 19, 2017). There is no reason DCOR's second permit, or any future permits, should be treated differently. DCOR complains that "prior to the litigation" approval of permits took "approximately three weeks"—however, it is no surprise that the permit process went faster when done illegally. DCOR Motion at 5. Like all other operators, DCOR must wait until Federal Defendants comply with the law before its applications can go forward. DCOR's inflated harms cannot reasonably be attributed to this Court's injunction. Therefore, the only irreparable harm at issue is that which Plaintiffs will face if DCOR's motion is granted, which outweighs any harm to DCOR. *See National Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001), *cert. denied* 534 U.S. 1104 (2002) (ruling that "loss of anticipated revenues" to another party "does not outweigh the potential irreparable damage to the environment"); *Earth Island Inst. v. U.S. Forest Serv*., 442 F.3d 1147, 1177 (9th Cir. 2006), *cert. denied* 549 U.S. 1278 (2007) (holding that economic losses did not outweigh irreparable environmental harm from proposed timber sales).

### D.   Ensuring the Federal Government Complies with the Law Would Not be a Disservice to the Public Interest.

Under the final factor for injunctive relief, the Court must determine whether the public interest "would not be disserved by a permanent injunction." *Monsanto*,

561 U.S. at 157. In the ESA context, the Supreme Court has already recognized "that Congress established an unparalleled public interest in the 'incalculable' value of preserving endangered species." *Cottonwood,* 789 F.3d at 1090 (citing *TVA v. Hill*, 437 U.S. at 187–88). The Ninth Circuit has likewise acknowledged the public interest in "preserving nature and avoiding irreparable environmental injury" and in "careful consideration of environmental impacts before major federal projects go forward." *All. for the Wild Rockies*, 632 F.3d at 1138. Here, as this Court has already ruled, the public interest "is served by an order ensuring the government complies with the law" and nothing has changed to undermine that ruling. Order at 34; *see also N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010) (noting that "it is obvious that compliance with the law is in the public interest").

Moreover, the injunction provides a critical benefit to the public interest because it helps carry out the important national policy of saving threatened and endangered species, by ensuring compliance with Section 7, 16 U.S.C. Section 1536 (a)(2). *See TVA v. Hill*, 437 U.S. at 173; *Karuk Tribe of California*, 681 F.3d at 1019. Allowing any permits to proceed until the CZMA and ESA processes conclude would disserve the important public interest in preventing harm to listed species. *See All. for the Wild Rockies*, 632 F.3d at 1138 (internal citations omitted) (noting that suspending action until a legally-required process for assessing environmental impacts concludes "comports with the public interest"). In addition, allowing consultation specifically at the *programmatic* level to conclude before any WST permits may issue is in the public interest because it will provide the most accurate assessment of the collective impacts of WST use throughout the Pacific OCS. There is no countervailing public interest in allowing offshore fracking before Federal Defendants comply with the law. Even the statute authorizing offshore oil development requires that oil exploration and production

be "balanced with 'protection of the human, marine, and coastal environments.'" *Nat. Res. Def. Council v. Hodel*, 865 F.2d 288, 292 (D.C. Cir. 1988) (quoting 43 U.S.C. § 1802(1)–(2)). The injunction in this case appropriately accommodates for any other public interest considerations because it temporarily halts production only until the legally-required processes conclude.

## IV.   <u>The Injunction is Narrowly Tailored to Redress Plaintiffs' Injuries.</u>

DCOR incorrectly asserts that the Court's injunction is "overbroad." DCOR Motion at 13. However, this Court's injunction is appropriate in scope because it is "no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) ("Injunctive relief…must be tailored to remedy the specific harm alleged"). Here, relief to Plaintiffs means ensuring compliance with the ESA and CZMA. That, alone, is exactly what the Court ordered. DCOR's request would not "narrowly tailor" the injunction; to the contrary, it would provide a flat-out exemption to this Court's important Order. If DCOR were allowed this exemption, its permits could threaten to jeopardize listed species. Therefore, the Court's injunction appropriately protects the interests at stake in this case and places no unfair burdens on DCOR. *Id.* at 974 (focusing on the "interest protected" in that case and upholding an injunction where it placed defendant in position it would have been in if it complied with the law).

The cases DCOR cites on this issue do not undermine the Court's injunction. In *California v. Azar*, the court determined that a *nationwide* injunction was broader than necessary because the record only contained evidence of harm to plaintiff states, and not other states; thus, the injunction had to be "narrowed to redress only the injury shown as to the plaintiff states." 911 F.3d 558, 584 (9th Cir.

2018).  Here, the injunction is already limited to the discrete injuries Plaintiffs face: it prohibits the use of only the challenged WST practices, only in the Pacific OCS region, and only until Federal Defendants comply with the ESA and CZMA processes.  Therefore, it cannot be said that the injunction does anything more than address Plaintiffs' specific injuries, and thus it is not overbroad.

## CONCLUSION

DCOR drastically overstates the effect that this Court's injunction will have on its oil and gas production activities and seeks a special exemption from the Judgment.  However, like all other operators, DCOR must wait for the processes required under the ESA and CZMA to conclude before proceeding with offshore well stimulation.  On the other hand, if DCOR is granted the exemption it seeks, Plaintiffs will suffer irreparable harm.  The injunction in this case is necessary to maintain the status quo while the required agency processes conclude, and to protect the twenty-five threatened and endangered species affected by WST activities.  Because DCOR has failed to meet the strict standards of Rules 59(e) and 60(b), and because the Court properly considered the *Monsanto* factors when it issued its injunction, DCOR's Motion must be denied.


Respectfully submitted this 25th day of March, 2019


/s/ *Margaret Morgan Hall*

Margaret Morgan Hall (Bar No. 293699)

/s/ *Linda Krop*


*Attorneys for Plaintiffs*
ENVIRONMENTAL DEFENSE CENTER AND
SANTA BARBARA CHANELKEEPER

# CERTIFICATE OF SERVICE

I, Margaret Morgan Hall, hereby certify that on March 25, 2019, I electronically filed PLAINTIFFS ENVIRONMENTAL DEFENSE CENTER'S AND SANTA BARBARA CHANNELKEEPER'S OPPOSITION TO DEFENDANT-INTERVENOR DCOR, LLC's MOTION FOR PARTIAL AMENDMENT OF JUDGMENT OR PARTIAL RELIEF FROM ORDER and corresponding PROPOSED ORDER with the Clerk of the Court using the CM/ECF system, which constitutes appropriate service pursuant to Local Rule 5-3.2.

/s/ *Margaret Morgan Hall*

Margaret Morgan Hall