1  | KRISTEN MONSELL (CA Bar No. 304793)
2  | Email: kmonsell@biologicaldiversity.org
   | EMILY JEFFERS (CA Bar No. 274222)
3  | Email: ejeffers@biologicaldiversity.org
4  | Center for Biological Diversity
   | 1212 Broadway, Suite 800
5  | Oakland, CA 94612
6  | Phone: (510) 844-7137
   | Facsimile: (510) 844-7150
7
8  | *Attorneys for Plaintiffs Center for*
   | *Biological Diversity and Wishtoyo*
9  | *Foundation*

10 | **IN THE UNITED STATES DISTRICT COURT**
   | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11 | **WESTERN DIVISION**

12

13 | ENVIRONMENTAL DEFENSE CENTER, et al.,   |   2:16-cv-08418-PSG-FFM

14 |   |   **PLAINTIFFS CENTER FOR BIOLOGICAL DIVERSITY AND WISHTOYO FOUNDATION'S OPPOSITION TO DCOR LLC'S MOTION FOR PARTIAL AMENDMENT OF JUDGMENT OR PARTIAL RELIEF FROM ORDER**

15 | Plaintiffs,

16 | v.

17 | BUREAU OF OCEAN ENERGY MANAGEMENT, et al.,

18

19 | Defendants.   |   Date:  April 29, 2019
   |   Time: 1:30 p.m.
20 |   |   Courtroom: 6A
   |   Judge:  Hon. Philip S. Gutierrez

21

22

23

24

25

26

27

28

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ................................................................................ii

3

INTRODUCTION ........................................................................................... 1

4

STANDARD OF REVIEW .............................................................................. 2

5

ARGUMENT .................................................................................................. 2

6

    I.     The Court Correctly Recognized that the Bureaus' Violations of Bedrock

7

            Environmental Laws Constitute Serious Errors of Law ........................... 2

8

    II.    The Court Applied the Relevant Test and DCOR Fails to Provide Any

9

            Valid Reason Why the Court Should Amend its Judgment ...................... 5

10

    III.   The Court Would Reach the Same Result Were it to Reconsider its

11

            Judgment in light of DCOR's Motion ................................................... 10

12

CONCLUSION ............................................................................................. 14

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987)…………………10,11,13

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).............. 13

*California v. Norton*, 311 F.3d 1162 (9th Cir. 2002) ...........................................4,5

*California ex rel. Lockyer v. U.S Dep't of Agric.*, 575 F.3d 999 (9th Cir. 2009) ... 11

*Citizens for Better Forestry v. U.S. Dep't of Agric.*,
   481 F. Supp. 2d 1059 (N.D. Cal. 2007)...................................................... 4

*Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988) .................................................. 5

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
   789 F.3d 1075 (9th Cir. 2015) ...........................................................3,12

*Davis v. Mineta*, 302 F.3d 1104 (10th Cir. 2002)…………………………………….7

*Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172 (9th Cir. 2000)............ 7

*Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006 (9th Cir. 2012)…………..3

*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000)……………...2

*League of Wilderness Defenders v. Connaughton*,
   752 F.3d 755 (9th Cir. 2014)……………………………………………………...8,13

*Marbled Murrelet v. Babbitt*, 83 F.3d 1068 (9th Cir. 1996) .................................. 14

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) .................................. 6

*Mont. Envtl. Info. Ctr. v. U.S. Office of Surface Mining*, No.15-106-M-DWM,
   2017 U.S. Dist. LEXIS 182814 (D. Mont. Nov. 3, 2017)..................................... 13

*Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032 (D. Mont. 2006)................... 8

*N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152 (9th Cir. 1988) ................................... 8

*Nat. Res. Defense Council v. Houston*, 146 F.3d 1118 (9th Cir. 1998) ................... 5

*Nat'l Parks Conservation Ass'n v. Babbitt*, 241 F.3d 722 (9th Cir. 2001) .............. 8

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
   886 F.3d 803 (9th Cir. 2018) ……………………………………………6,11,12,13

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*,
   482 F. Supp. 2d 1248 (W.D. Wash. 2006) ........................................................... 5

ii

*Pac. Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994) ...............................4

*San Luis Valley Ecosystem Council v. U.S. Fish & Wildlife Serv.*,
    657 F. Supp. 2d 1233 (D. Colo. 2009) ...................................................14

*School Dist. No. 1J, Multnomah County v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ...............................................................2

*Sierra Club v. Marsh*, 816 F.2d 1376 (9th Cir. 1987)............................................13

*Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978 (8th Cir. 2011)...............7

*Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978).............................................3,10,14

*Thomas v. Peterson*, 753 F.2d 754 (9th Cir. 1985)…………………………………..3

*United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483 (2001)…………..10

*Wash. Toxics Coalition v. EPA*, 413 F.3d 1024 (9th Cir. 2005) ............................ 14

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)…………………………...10

*Wilderness Soc'y v. Tyrrel*, 701 F. Supp. 1473 (E.D. Cal. 1988)…………………..8

*Winter v. Nat. Resources Defense Council*, 555 U.S. 7 (2008)………………………9

*Wood v. Ryan*, 759 F.3d 1117 (9th Cir. 2014)…………………………………..2

*Zimmerman v. City of Oakland*, 255 F.3d 734 (9th Cir. 2001) ...............................2

**Statutes**

16 U.S.C. § 1536(a)(2) ...........................................................................3

16 U.S.C. § 1536(d)................................................................................5

16 U.S.C. § 1451(b)................................................................................3

16 U.S.C. § 1451(e) ...............................................................................4

16 U.S.C. § 1451(m)...............................................................................4

16 U.S.C. § 1452(1)................................................................................4

16 U.S.C. § 1454....................................................................................4

16 U.S.C. § 1455....................................................................................4

16 U.S.C. § 1456(c)(1)(A)........................................................................4

1

**Regulations**

2

50 C.F.R. § 402.12 .................................................................................................3

3

50 C.F.R. § 402.16 .................................................................................................3

4

5

**Federal Rules of Civil Procedure**

6

Fed. Rule Civ. Pro. 59(e) ..................................................................................1,2,6

7

Fed. Rule Civ. Pro. 60(b) ..................................................................................1,2,6

8

**Other Authorities**

9

10

Bureau of Ocean Energy Management, *Pacific OCS Development & Production Plans,* https://www.boem.gov/Pacific_OCS_Region_DPPs/#Gilda ........................ 7

11

12

Bureau of Safety and Environmental Enforcement, *Pacific Region Completed Applications for Permit to Modify (APM)*, https://www.bsee.gov/stats-facts/ocs-regions/pacific-region-completed-applications-for-permit-to-modify-apm .............. 9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

1

**INTRODUCTION**

2       In ruling on cross motions for summary judgment, this Court held that the

3   Bureau of Ocean Energy Management, the Bureau of Safety and Environmental

4   Enforcement, and their officers (collectively, "the Bureaus") violated the

5   Endangered Species Act ("ESA") and the Coastal Zone Management Act

6   ("CZMA") in authorizing the use of hydraulic fracturing ("fracking") and other

7   dangerous oil extraction techniques in federal waters off California. Dkt. 126 at 41.

8   Accordingly, the Court ordered the Bureaus to refrain from approving any plans or

9   permits allowing the use of offshore fracking and other well stimulation treatments

10  until the Bureaus complete consultation with the U.S. Fish and Wildlife Service

11  under the ESA and the consistency review process under CZMA. *Id.*; *see also* Dkt.

12  132 (judgment). In issuing its order, the Court conducted the proper legal test,

13  considered the relevant facts, and reached the correct result.

14       Nevertheless, Defendant-Intervenor DCOR, LLC ("DCOR") now asks the

15  Court to amend its judgment under Federal Rule of Civil Procedure 59(e) or 60(b)

16  so that the Bureaus can approve two permit applications authorizing DCOR to use

17  offshore fracking at its operations in federal waters off California. Dkt. 133. DCOR

18  provides no valid reason why the Court should amend its well-reasoned order. First,

19  DCOR's motion mischaracterizes the nature of the Bureaus' legal errors and

20  ignores bedrock law that ESA-listed species and their habitats are to be afforded the

21  highest of priorities. Second, DCOR's motion is based entirely on hypothetical

22  assertions of financial harm that do not constitute the extraordinary circumstances

23  necessary for the relief DCOR seeks. Finally, even if the Court were to reconsider

24  its issuance of injunctive relief, the result would be the same: DCOR's purported

25  financial harm from temporarily not being allowed to frack its offshore wells

26  simply cannot trump the significant environmental interests at issue in this case.

27  The Court should therefore deny DCOR's motion.

28

1

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STANDARD OF REVIEW

Motions to amend or grant relief from a final judgment under Federal Rules of Civil Procedure 59(e) and 60(b) are "extraordinary remed[ies], to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1120–21 (9th Cir. 2014) (per curiam) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

In particular, a court may alter or amend its judgment under Federal Rule of Civil Procedure 59(e) if: (1) the court is presented with new evidence or authority; (2) the court has committed clear error, or the initial decision was manifestly unjust; or (3) there has been an intervening change of law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). And Federal Rule of Civil Procedure 60(b) allows a court to provide relief from a final judgment for six reasons, including: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . or (6) any other reasons that justifies relief." A party seeking relief under Federal Rule of Civil Procedure 60(b)(6) "must show extraordinary circumstances justifying the reopening of a final judgment." *Wood*, 759 F.3d at 1120 (quotation marks and citation omitted). DCOR's motion does not satisfy any of these standards.

## ARGUMENT

### I.   The Court Correctly Recognized that the Bureaus' Violations of Bedrock Environmental Laws Constitute Serious Errors of Law

In its effort to convince this Court to reconsider its decision, DCOR downplays the Bureaus' legal violations as minimal or insignificant. *E.g.*, Dkt. 133 at 10. The Bureaus' violations of the ESA and CZMA are serious errors of law that threaten imperiled wildlife and important coastal resources.

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation" and embodies the "plain intent" of

2

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1    Congress "to halt and reverse the trend toward species extinction, whatever the

2    cost." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180, 184 (1978); *see also*

3    *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090 (9th Cir.

4    2015) (With the ESA, "Congress established an unparalleled public interest in the

5    'incalculable' value of preserving endangered species") (citation omitted).

6         There is little question that failure to comply with the ESA's consultation

7    mandate is a very serious error of law. The ESA's consultation procedure—the

8    procedure the Bureaus unlawfully avoided here—is the process by which agencies

9    carry out the ESA's substantive mandate to protect threatened and endangered

10   species from jeopardy to their continued existence. 16 U.S.C. § 1536(a)(2); 50

11   C.F.R. §§ 402.12–402.16. As the Ninth Circuit has instructed, "the strict

12   substantive provisions of the ESA justify *more* stringent enforcement of its

13   procedural requirements, because the procedural requirements are designed to

14   ensure compliance with the substantive provisions." *Thomas v. Peterson*, 753 F.2d

15   754, 764 (9th Cir. 1985). It is hard to overstate the importance of this process:

16   Section 7 is the very "heart" of the ESA, *Karuk Tribe of Cal. v. U.S. Forest Serv.*,

17   681 F.3d 1006, 1019 (9th Cir. 2012) (citation omitted), and violating it as the

18   Bureaus did cuts to the very foundation of the statute. Indeed, "[t]he consultation

19   requirement reflects 'a conscious decision by Congress to give endangered species

20   priority over the primary missions of federal agencies.'" *Id.* at 1020 (quoting *Tenn.*

21   *Valley Auth.*, 437 U.S. at 185 (quotation marks omitted)).

22        CZMA also seeks to protect vitally important resources. In enacting CZMA,

23   Congress recognized that "[t]he coastal zone is rich in a variety of natural,

24   commercial, recreational, ecological, industrial, and esthetic resources of immediate

25   and potential value to the present and future well-being of the Nation." 16 U.S.C. §

26   1451(b). As such, CZMA seeks "to preserve, protect, develop, and where possible,

27   to restore or enhance, the resources of the Nation's coastal zone." *Id*. § 1452(1).

28

3

1       To comply with these goals, CZMA enhances the ability of coastal states to

2    assume planning and regulatory powers over their coastal zone. *Id*. §§ 1451(m),

3    1454, 1455. For coastal states with approved management programs, CZMA

4    provides them the right to review each "Federal agency activity within or outside

5    the coastal zone that affects any land or water use or natural resource of the coastal

6    zone," for consistency with the state's coastal management programs. *California v.*

7    *Norton*, 311 F.3d 1162, 1167 (9th Cir. 2002) (citing 16 U.S.C. § 1456(c)(1)(A)).

8    The consistency review process helps to prevent "[i]mportant ecological, cultural,

9    historic, and esthetic values in the coastal zone . . . [from] being irretrievably

10   damaged or lost," as intended by CZMA. 16 U.S.C. § 1451(e).

11       The Court recognized these legal realities in prohibiting the Bureaus from

12   approving permits and plans for offshore fracking and other well stimulation on the

13   Pacific Outer Continental Shelf ("OCS") until the processes mandated by the ESA

14   and CZMA are completed. The Court's injunction is not overbroad as DCOR

15   contends. *See* Dkt. 133 at 13. It is not a nationwide injunction; it applies only to

16   active oil and gas leases on the Pacific OCS; and applies only to the approval of

17   four specifically defined types of well stimulation treatments (activities DCOR

18   itself repeatedly claimed in it summary judgment briefing would occur only

19   infrequently, Dkt. 107 at 1–5, Dkt. 120 at 3–5). In other words, the Court's

20   injunction is narrowly tailored to remedy the specific violations at issue.

21       DCOR's assertion that the Court should "exempt" DCOR from the injunction

22   because the Bureaus can comply with the ESA and CZMA in approving DCOR's

23   individual permit application, Dkt. 133 at 12, 17, is also wrong. "The Ninth Circuit

24   has undeniably interpreted [the] ESA to require consultation on programmatic

25   actions and rules, including consultation at the planning stage, not just the site-

26   specific stage." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 481 F. Supp. 2d

27   1059, 1095 (N.D. Cal. 2007) (citing *Pac. Rivers Council v. Thomas*, 30 F.3d 1050,

28

4

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1055 (9th Cir. 1994)). Only once that programmatic consultation is complete can an agency approve site-specific action under that program; otherwise, the Bureaus cannot ensure that the issuance of permits under that program will not violate the ESA. *See Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*, 482 F. Supp. 2d 1248, 1267 (W.D. Wash. 2006) (rejecting agency's deferral of analysis from programmatic stage to site-specific consultations because, *inter alia*, deferral "necessarily improperly curtails the discussion of cumulative effects"); adopted in pertinent part, 482 F. Supp. 2d at 1250 (W.D. Wash. 2007); *Conner v. Burford*, 848 F.2d 1441, 1455 (9th Cir. 1988) (rejecting the invitation "to carve out a judicial exception to [the] ESA's clear mandate that a comprehensive biological opinion . . . be completed before initiation of the agency action"). Indeed, DCOR's position would eviscerate the entire purpose of programmatic consultation and allow the Bureaus to "pass the point of no return" by committing an irretrievable commitment of resources before programmatic consultation is complete. *See* Dkt. 126 at 32; *see also id.* at 33–34 (holding "that *Houston* and the ESA itself prohibit the [Bureaus] from approving WST permits before [the ongoing] consultation with FWS is complete because doing so would constitute an 'irreversible or irretrievable commitment of resources.'") (citing 16 U.S.C. § 1536(d); *Nat. Res. Defense Council v. Houston*, 146 F.3d 1118, 1128 (9th Cir. 1998)).[1]

## II. The Court Applied the Relevant Test and DCOR Fails to Provide Any Valid Reason Why the Court Should Amend its Judgment

The Court's order enjoining the Bureaus from approving permits or plans allowing offshore fracking and other well stimulation treatments on the Pacific

---

[1] The same is true of CZMA. *See Norton*, 311 F.3d at 1169, 1178 (setting aside approval of offshore lease suspensions because the Bureaus failed to conduct consistency review of the suspensions). Once a permit is issued, the permit cannot incorporate any mitigation measures that may be required as the result of the consistency review process on the Bureaus' programmatic decision to allow offshore fracking and acidizing.

5

1   OCS pending the Bureaus' compliance with the ESA and CZMA was warranted

2   and, therefore, provides no basis for relief under Federal Rule of Civil Procedure

3   59(e) or 60(b). In issuing a permanent injunction, a court must find:

4
5   (1) that [the plaintiff] has suffered an irreparable injury; (2) that
      remedies available at law, such as monetary damages, are inadequate
6      to compensate for that injury; (3) that, considering the balance of
      hardships between the plaintiff and defendant, a remedy in equity is
7      warranted; and (4) that the public interest would not be disserved by a
      permanent injunction.
8

9   *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).

10   This is precisely the test the Court applied. *See* Dkt. 126 at 32–34, 40.[2] The

11   Court analyzed each of the factors, concluding that Plaintiffs would suffer

12   irreparable harm absent an injunction; that monetary damages are an insufficient

13   remedy for these harms; that the balance of the harms tips in favor of Plaintiffs

14   because an injunction would not substantially interfere with the course of action the

15   Bureaus would already take; and that the public interest is served by an order

16   ensuring the Bureaus' compliance with the law. *Id.*

17   DCOR's motion—which is based entirely on its alleged financial harm from

18   not being able to frack its offshore wells—provides no valid reason to disturb the

19   Court's order. DCOR's purported financial harm is not the result of this Court's

20   order, and therefore should not be weighed by this Court. But even if considered,

21   DCOR's asserted economic injuries, which are temporary and partial, simply do not

22   outweigh the potential environmental harm posed by offshore fracking and

23   acidizing. None of the cases cited by DCOR suggest otherwise.

24   First, DCOR's asserted injuries should not be weighed because they are self-

25   _____

26   [2] Because the injunction issued by this Court only lasts until the processes
      mandated by the ESA and CZMA are complete, it is not a "permanent" injunction
27   in the traditional sense. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886
      F.3d 803, 817 (9th Cir. 2018) (acknowledging distinction).
28

6

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1    inflicted. *See Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1187 (9th

2    Cir. 2000) (discounting harm where federal agency and private party "acted at their

3    peril"); *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th

4    Cir. 2011) ("When [a party] 'jump[s] the gun' or 'anticipate[s] a pro forma result'

5    in permitting applications, they become 'largely responsible for their own harm.'")

6    (quoting *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002)). DCOR's

7    purported financial harm results from DCOR's ongoing failure to amend its

8    development and production plan, and its submission of a permit to frack *after* the

9    Court issued its order. As explained by the Bureaus in various motions before this

10   Court, DCOR submitted an application to frack from Platform Gilda in December

11   2016. *E.g.*, Dkt. 43 at 16 (the Bureaus' motion to dismiss). Then, in January 2017,

12   the Bureaus informed DCOR that because fracking was not an activity described in

13   its development and production plan for Platform Gilda, DCOR would need to

14   supplement that plan before the Bureaus could process its application. *Id.* at 16–17.

15   But it does not appear DCOR ever acted on that instruction. *See* Bureau of Ocean

16   Energy Management, *Pacific OCS Development & Production Plans,*

17   https://www.boem.gov/Pacific_OCS_Region_DPPs/#Gilda (clicking on drop-down

18   menu for Platform Gilda under box titled "Santa Clara Unit" shows last approved

19   plan occurred in 1980) (accessed Mar. 25, 2019). Moreover, DCOR submitted its

20   more recent permit application to frack on January 10, 2019, Dkt. 133 at 5—the

21   same day it filed its instant motion—when DCOR knew full-well that the Court had

22   enjoined the Bureaus from issuing permits authorizing offshore fracking on the

23   Pacific OCS pending the agencies' compliance with the ESA and CZMA. And

24   because DCOR has not yet supplemented its development plan for Platform Gilda,

25   the Bureaus could not approve its more recent application regardless of the Court's

26   order. In other words, DCOR has caused its own alleged harm.

27          Second, even if this Court considers DCOR's asserted injuries, DCOR's

28

7

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1    purported financial harms do not satisfy the requisite standards under Federal Rule

2    of Civil Procedure 59(e) or 60(b). That is because such harms simply cannot

3    outweigh the important environmental harms at issue in this case. As courts have

4    explained, "[a] third party's potential financial damages from an injunction

5    generally do not outweigh potential harm to the environment." *Mont. Wilderness*

6    *Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1034 (D. Mont. 2006); *Nat'l Parks*

7    *Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001) (holding that the

8    loss of anticipated revenues to a cruise ship "does not outweigh the potential

9    irreparable damage to the environment"); *Wilderness Soc'y v. Tyrrel*, 701 F. Supp.

10   1473, 1491 (E.D. Cal. 1988) ("[E]conomic loss cannot be considered compelling if

11   it is to be gained in contravention of federal law") (citing *N. Cheyenne Tribe v.*

12   *Hodel*, 851 F.2d 1152, 1157 (9th Cir. 1988)).

13          That is particularly true here, because DCOR's injuries are temporary. *See*

14   *League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 766 (9th Cir.

15   2014) (holding that "irreparable environmental injuries outweigh the temporary

16   delay intervenors face in receiving a part of the economic benefits of the project").

17   DCOR's recitation of the alleged extent of its financial harm, *e.g.*, Dkt. 133 at 6,

18   ignores the basic fact that the injunction issued by this Court lasts only until the

19   ESA consultation and CZMA consistency review processes are completed.[3]

20   Moreover, DCOR's injuries are only partial—the Bureaus may still approve and

21   DCOR can still conduct conventional drilling operations during the pendency of the

22   injunction. Indeed, the Bureaus have recently approved several of DCOR's permit

23

24          [3] DCOR provides no evidence for its claims that the ESA and CZMA
25   processes at issue will take multiple years. In fact, it appears just as likely that the
     approach proposed by DCOR in its motion—to have the Bureaus engage in ESA
26   consultation on DCOR's individual permit applications, rather than comply with
     the injunction mandated by the Court—will take longer, particularly considering
27   that programmatic consultation with the U.S. Fish and Wildlife Service is already
28   underway.

8

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1    applications involving various drilling activity. *See* Bureau of Safety and

2    Environmental Enforcement, *Pacific Region Completed Applications for Permit to*

3    *Modify (APM)*, https://www.bsee.gov/stats-facts/ocs-regions/pacific-region-

4    completed-applications-for-permit-to-modify-apm (approving eight DCOR drilling

5    permit applications submitted from Dec. 2018 to Feb. 6, 2019) (accessed Mar. 25,

6    2019).

7         DCOR's claim that the Court must modify its injunction in light of *Winter v.*

8    *Nat. Resources Defense Council*, 555 U.S. 7 (2008), Dkt. 133 at 1, is incorrect. In

9    *Winter*, the Supreme Court held that a preliminary injunction issued by a district

10   court and upheld by the Ninth Circuit was improper because the lower courts had

11   not properly considered the national security interests at stake in evaluating the

12   balance of harms. *Id.* at 25–26. The Court ruled that, in the circumstances of that

13   case, the potential harms to Plaintiffs' "ecological, scientific, and recreational

14   interests," while "serious," could not outweigh the potential harm from enjoining

15   Naval training exercises, which the President of the United States had deemed

16   "essential to national security." *Id.* at 26. Here, in contrast, no national security

17   interests are at stake—only one oil company's temporary financial harm.

18        *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982), and *Amoco Prod. Co.*

19   *v. Village of Gambell*, 480 U.S. 531 (1987), are of no help to DCOR either. In those

20   cases, the Supreme Court overturned injunctions issued by the lower courts because

21   they had failed to properly balance the injunction factors, and instead assumed that

22   a violation of the law at issue necessitated enjoining the underlying action. *Romero-*

23   *Barcelo*, 456 U.S. at 320; *Amoco Prod. Co.*, 480 U.S. at 541–46. Those cases stand

24   only for the proposition that injunctive relief is discretionary rather than mandatory

25   under the statutes at issue in those cases: the Clean Water Act and Alaska National

26

27

28

9

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1    Interest Lands Conservation Act, respectively. *See id.*[4]

2          Here, as explained above, the Court did not presume an injunction should

3    issue upon finding the Bureaus in violation of the ESA and CZMA. Rather, the

4    Court exercised its discretionary authority to analyze the applicable factors and

5    determine that the balance of the factors favored an injunction. DCOR provides no

6    valid reason why the Court should reconsider its order.

7    **III.  The Court Would Reach the Same Result Were it to Reconsider its

8          Judgment in light of DCOR's Motion**

9          Even if the Court were to reconsider its judgment in light of DCOR's motion

10   (which it should not), the injunction would still issue. In arguing otherwise,

11   DCOR's primary argument is that its asserted financial harm outweighs harm to

12   Plaintiffs. DCOR is mistaken.

13         Although injunctions have been characterized as an extraordinary remedy,

14   courts have consistently recognized that they are an appropriate remedy—and often

15   the only remedy—in environmental cases. As the Supreme Court has explained:

16
17         Environmental injury, by its nature, can seldom be adequately remedied
           by money damages and is often permanent or at least of long duration,
18         *i.e.,* irreparable. If such injury is sufficiently likely, therefore, the
           balance of harms will usually favor the issuance of an injunction to
19         protect the environment.

20

21   *Amoco Prod. Co.*, 480 U.S. at 545; *see also California ex rel. Lockyer v. U.S Dep't

22   of Agric.*, 575 F.3d 999, 1020 (9th Cir. 2009) (quoting same). That is especially true

23   ─────────────────

24         [4] The Supreme Court has recognized in *Romero-Barcelo* and other cases that
     injunctive relief is often the only way to effectuate the purposes of the ESA. *See
25   United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 498 (2001) ("The
     District Court lacked discretion [to deny an injunction] because an injunction was
26   the only means of ensuring compliance. Congress' order of priorities, as expressed
     in the [ESA], would be deprived of effect if the District Court could choose to deny
27   injunctive relief") (internal quotations omitted) (citing *Tenn. Valley Auth.*, 437 U.S.
28   at 194; *Romero-Barcelo*, 456 U.S. at 314).

                                          10
     CBD and Wishtoyo Opp. to Motion to Amend J.
     Case No. 2:16-cv-08418-PSG-FFM

1   for violations of the ESA. As the Ninth Circuit recently reiterated:

> The ESA strips courts of at least some of their equitable discretion in
> determining whether injunctive relief is warranted. The ESA removes
> the latter three factors in the four-factor injunctive relief test from our
> equitable discretion. When considering an injunction under the ESA,
> we presume that remedies at law are inadequate, that the balance of
> interests weighs in favor of protecting endangered species, and that the
> public interest would not be disserved by an injunction.

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 817 (9th

Cir. 2018) (citing *Cottonwood Envtl. Law Ctr.*, 789 F.3d at 1090).

Each of the relevant standards for injunctive relief is satisfied here. First,

Plaintiffs would likely suffer irreparable harm absent an injunction. *See Nat'l*

*Wildlife Fed'n*, 886 F.3d at 817 (holding that when an injunction may be lifted after

a federal agency's compliance with environmental law, "the first prong of the

injunction test should be modified to match the analogous prong in the preliminary

injunction test: plaintiffs must show that they are 'likely to suffer irreparable harm

in the absence of preliminary relief'") (citation omitted). Where a case involves

harm to endangered and threatened species and the ecosystems that support them,

"establishing irreparable injury should not be an onerous task for plaintiffs."

*Cottonwood Envtl. Law Ctr.*, 789 F.3d at 1091. This case is no exception.

As Plaintiffs explained in their summary judgment papers, offshore fracking

and acidizing are dangerous oil extraction techniques that heighten the inherently

dangerous effects of offshore oil and gas drilling. *E.g.*, Dkt. 97 at 5–6, 23–24. As

Plaintiffs described, these practices increase the risk of oil spills, and use toxic

chemicals that threaten water quality and marine life, including ESA-listed species

like sea otters. *Id.* at 5 (describing studies finding toxic chemical used in fracking

can affect survival of marine invertebrates and bioaccumulate in sea otters).

Offshore well stimulation practices can also prolong the lifespan of offshore drilling

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1     operations and all the environmental harms that come with offshore drilling. *Id.*

2         The Bureaus themselves acknowledged the numerous harms that could befall

3     marine life from allowing offshore fracking and acidizing. For example, the

4     Bureaus recognized that the discharge of fracking wastewater into the ocean may

5     affect sea turtles, marine mammals, fish, seabirds, and benthic organisms, including

6     through localized exposure to potentially toxic levels of well stimulation chemicals

7     and loss of prey similarly exposed. *Id.* at 23. The Bureaus also recognized that the

8     accidental release of chemicals during transport and delivery may affect several

9     listed marine mammals, including lethal impacts. *Id.* at 24 (citing AR 16440,

10     16484, 16488). Plaintiffs also submitted declarations describing how these impacts

11     harm their members' aesthetic, recreational, spiritual, and other interests in the

12     affected wildlife and habitat. *E.g.*, Dkt. 97-1, 97-2.

13         These harms are the definition of irreparable. *See, e.g., Mont. Envtl. Info. Ctr.*

14     *v. U.S. Office of Surface Mining*, No.15-106-M-DWM, 2017 U.S. Dist. LEXIS

15     182814, at *9–10 (D. Mont. Nov. 3, 2017) (finding that environmental injury was

16     irreparable because "federal coal, once mined, cannot be put back into the ground"

17     and "pollution and greenhouse gas[es]. . . once released into the atmosphere, cannot

18     be removed by any judicial action"); *see also Nat'l Wildlife Fed'n*, 886 F.3d at 818

19     (harm to members of a threatened or endangered species is irreparable); *Alliance*

20     *for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (logging that

21     harms a plaintiff's "ability to 'view, experience, and utilize'" an area in an

22     undisturbed state is "actual and irreparable injury" that "satisfies the 'likelihood of

23     irreparable injury' requirement articulated in *Winter*"). The Court correctly

24     determined that allowing offshore fracking and acidizing to continue without the

25     process mandated by the ESA would constitute an irreversible, irretrievable

26

27

28

12

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1   commitment of resources; and that an injunction is necessary to prevent this

2   irreparable harm. Dkt. 126 at 33–34.[5]

3        Second, these harms are not capable of being remedied by monetary

4   damages. It is well-established that monetary damages are insufficient to remedy

5   the environmental harms at issue in this case. *See Amoco Prod. Co.*, 480 U.S. at

6   545 (environmental injuries can "seldom be adequately remedied by money

7   damages"); *League of Wilderness Defenders*, 752 F.3d at 764 (quoting same).

8   Plaintiffs did not seek monetary damages, but rather the declaratory and injunctive

9   relief the Court issued.

10        Third, the balance of hardships and public interest tips sharply in favor an

11   injunction. Under the clear and consistent caselaw of the Ninth Circuit and the

12   Supreme Court, the balance of hardships and public interest factors *always* sharply

13   favor an injunction in cases brought under the ESA. *Nat'l Wildlife Fed'n*, 886 F.3d

14   at 817; *see also Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996)

15   ("Congress has determined that under the ESA the balance of hardships always tips

16   sharply in favor of endangered or threatened species"). This is because "Congress

17   has spoken in the plainest of words, making it abundantly clear that the balance has

18   been struck in favor of affording endangered species the highest of priorities."

19   *Tenn. Valley Auth.*, 437 U.S. at 194. Accordingly, courts "may not use equity's

20   scales to strike a different balance." *Sierra Club v. Marsh*, 816 F.2d 1376, 1383

21

22        [5] DCOR's suggestion that Plaintiffs will not suffer irreparable harm because

23   DCOR has been fracking for 40 years, Dkt. 133 at 2, is of no moment. The record is
replete with evidence of harm from offshore fracking. *See, e.g.*, Dkt. 97 at 5–6, 23–

24   24. And the ongoing consultation represents the *first* time the U.S. Fish and
Wildlife Service has *ever* studied the impacts of well stimulation on the Pacific

25   OCS on imperiled species. The fact DCOR has supposedly been fracking for 40

26   years does not mean that there has not been any harm, but rather that such activities
have occurred unlawfully for 40 years with no evaluation of whether offshore

27   fracking jeopardizes ESA listed species.

28

CBD and Wishtoyo Opp. to Motion to Amend J.
Case No. 2:16-cv-08418-PSG-FFM

1    (9th Cir. 1987); *see also Wash. Toxics Coalition v. EPA*, 413 F.3d 1024, 1035 (9th

2    Cir. 2005) (a court cannot "balance interests in protecting endangered species

3    against the costs of the injunction when crafting its scope").

4         That is particularly true here, where DCOR's alleged harm is purely financial

5    and (1) self-inflicted; (2) temporary; and (3) partial—some drilling will continue in

6    any event. *Supra* pp. 6–9; *see also San Luis Valley Ecosystem Council v. U.S. Fish*

7    *& Wildlife Serv.*, 657 F. Supp. 2d 1233, 1242 (D. Colo. 2009) (finding harm to

8    permit applicant uncompelling because a "delay in drilling the exploratory wells[]

9    is not irreparable"). In short, DCOR's alleged financial harm simply cannot

10   override Congress's directive in the ESA that listed species be protected "no matter

11   the cost." *Tenn. Valley Auth.*, 437 U.S. at 184.

## CONCLUSION

13        DCOR's motion provides no valid reason why the Court should grant the

14   extraordinary relief it seeks. The Court's order enjoining the Bureaus from

15   authorizing well stimulation treatments on the Pacific OCS until the Bureaus

16   comply with the ESA and CZMA was the right one under the law. DCOR's

17   temporary, speculative financial harm cannot trump the environmental harm from

18   allowing these activities without compliance with the procedures mandated by law.

19   The Court should therefore deny DCOR's Motion.

20    Dated:  March 25, 2019                    Respectfully submitted,

21                                              /s/ *Kristen Monsell*
                                                Kristen Monsell (CA Bar No. 304793)
22                                              kmonsell@biologicaldiversity.org
                                                Emily Jeffers (CA Bar No. 274222)
23                                              ejeffers@biologicaldiversity.org
                                                Center for Biological Diversity
24                                              1212 Broadway, Suite 800
                                                Oakland, CA 94612
25                                              Phone: (510) 844-7137
26
27                                              *Attorneys for Plaintiffs*
28

                                    14

1

2

**CERTIFICATE OF SERVICE**

3        I hereby certify that on March 25, 2019, I electronically filed the foregoing

4   with the Clerk of the Court using the CM/ECF system, which will be served upon

5   counsel of record through the Court's CM/ECF System.

6

7                                        /s/ *Kristen Monsell*
                                         Kristen Monsell

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15